UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID C. LETTIERI,

                          Plaintiff,

                                                      3:24-CV-0074
v.                                                    (TJM/ML)

CITY OF BINGHAMTON; CODE
ENFORCEMENT; and BINGHAMTON
POLICE,

                          Defendants.
_____

APPEARANCES:                                OF COUNSEL:

DAVID C. LETTIERI
  Plaintiff, *Pro Se*
Niagara County Jail
5526 Niagara Street Ex.
Lockport, New York 149094


MIROSLAV LOVRIC, United States Magistrate Judge


**<u>ORDER and REPORT-RECOMMENDATION</u>**

## I.    BACKGROUND

### A.    Procedural History

Plaintiff David C. Lettieri ("Plaintiff") commenced this civil rights action *pro se* on January 17, 2024, on a form complaint alleging that his rights were violated by Defendants City of Binghamton, Code Enforcement, and Binghamton Police (collectively "Defendants").  (Dkt. No. 1.)  Plaintiff did not pay the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP").  (Dkt. Nos. 2, 3.)

### B.        Complaint

Construed as liberally[1] as possible, Plaintiff's Complaint appears to allege that on December 31, 2022, squatters—that Defendant Code Enforcement authorized without consent by Plaintiff—burned down Plaintiff's house.  (Dkt. No. 1 at 5.)  Based on these factual allegations, Plaintiff appears to assert the following three claims: (1) a claim of failure to protect; (2) a claim that his due process rights were violated; and (3) a claim of unlawful search and seizure.  (*Id*. at 3.)  As relief, Plaintiff seeks $1,000,000,000 in damages and that "a new house [be] built."  (*Id*. at 5.)

Plaintiff seeks leave to proceed IFP.  (Dkt. No. 2.)

## II.        PLAINTIFF'S APPLICATION TO PROCEED IFP

Where a plaintiff seeks leave to proceed IFP, the Court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the Court's filing fee of four hundred and five dollars ($405.00). The Court must also determine whether the "three strikes" provision of 28 U.S.C. § 1915(g) ("Section 1915(g)") bars the plaintiff from proceeding IFP and without prepayment of the filing fee.  More specifically, Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

---

[1]        The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

28 U.S.C. § 1915(g).  If the plaintiff is indigent and not barred by Section 1915(g), the Court must consider the sufficiency of the claims stated in the complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

In this case, Plaintiff has failed to demonstrate economic need through his IFP application, because he failed to answer questions numbered 2 through 6 on the prisoner IFP application.  (Dkt. No. 2 at ¶¶ 2-6.)  As a result, the undersigned could deny Plaintiff's IFP application without prejudice on this basis alone.  However, as will be discussed below, because Plaintiff has three strikes and his Complaint does not allege that he was in imminent danger at the time of filing, his IFP application is denied with prejudice.

Plaintiff has filed the inmate authorization form required in the Northern District of New York.  (Dkt. No. 3.)  Thus, the Court must determine whether the "three strikes" rule of Section 1915(g) bars Plaintiff from proceeding with this action IFP.

### A.    Determination of "Strikes"

Plaintiff is a frequent litigator, having commenced, in addition to this action, at least seventy-seven civil actions in the federal district courts since 2022.  *See* PACER Case Locator <https://pcl.uscourts.gov/pcl/pages/search/findParty.jsf> (last visited January 23, 2024).  The following is a list of those actions: (1) *Lettieri v. Facebook*, No. 23-CV-6554 (N.D. Cal. filed Dec. 20, 2023); (2) *Lettieri v. Fed. Bureau of Investigation*, (N.D.N.Y. filed Aug. 30, 2023); (3) *Lettieri v. Northeast Ohio Corr. Cent.*, No. 23-CV-1136 (N.D.N.Y. filed Sept. 5, 2023);[2] (4) *Lettieri v. Dep't of Justice*, No. 23-CV-1272 (N.D.N.Y. filed Oct. 12, 2023); (5) *Lettieri v.*

---

[2]    This case was transferred to the district court for the Northern District of Ohio, where it was assigned case number 23-CV-2172 (N.D. Ohio filed Nov. 7, 2023).

*Garver*, No. 23-CV-1421 (N.D.N.Y. filed Nov. 15, 2023);[3] (6) *Lettieri v. Brigueal*, No. 23-CV-1597 (N.D.N.Y. filed Dec. 18, 2023); (7) *Lettieri v. Fed. Bureau of Investigation*, No. 23-CV-0309 (W.D.N.Y. filed Apr. 6, 2023); (8) *Lettieri v. Fed. Bureau of Investigation*, No. 23-CV-0318 (W.D.N.Y. filed Apr. 10, 2023); (9) *Lettieri v. United States Fed. Marshals*, No. 23-CV-0246 (W.D.N.Y. filed Mar. 20, 2023); (10) *Lettieri v. Fed. Marshals*, No. 23-CV-0359 (W.D.N.Y. filed Apr. 24, 2023); (11) *Lettieri v. Auricchio*, No. 23-CV-0441 (W.D.N.Y. filed May 17, 2023); (12) *Lettieri v. Fed. Bureau of Investigation*, No. 23-CV-0442 (W.D.N.Y. filed May 17, 2023); (13) *Lettieri v. Fed. Bureau of Investigation*, No. 23-CV-0471 (W.D.N.Y. filed May 30, 2023); (14) *Lettieri v. Daniels*, No. 23-CV-0487 (W.D.N.Y. filed June 5, 2023); (15) *Lettieri v. Fed. Bureau of Investigation*, No. 23-CV-0503 (W.D.N.Y. filed June 7, 2023); (16) *Lettieri v. Univ. of Rochester*, No. 23-CV-0504 (W.D.N.Y. filed June 7, 2023); (17) *Lettieri v. Town of Colesville*, No. 23-CV-0519 (W.D.N.Y. filed June 9, 2023); (18) *Lettieri v. Dep't of Justice*, No. 23-CV-0517 (W.D.N.Y. filed June 9, 2023); (19) *Lettieri v. New York State Police*, No. 23-CV-0518 (W.D.N.Y. filed June 9, 2023);[4] (20) *Lettieri v. Fed. Bureau of Investigation*, No. 23-CV-0679 (W.D.N.Y. filed July 12, 2023); (21) *Lettieri v. Dep't of Justice*, No. 23-CV-0697 (W.D.N.Y. filed July 14, 2023); (22) *Lettieri v. Dep't of Justice*, No. 23-CV-0698 (W.D.N.Y. filed July 14, 2023); (23) *Lettieri v. Dep't of Justice*, No. 23-CV-0699 (W.D.N.Y. filed July 14, 2023); (24) *Lettieri v. Dep't of Justice*, No. 23-CV-0696 (W.D.N.Y. filed July 14, 2023); (25) *Lettieri v. Dep't of Justic* [sic], No. 23-CV-0695 (W.D.N.Y. filed July 14, 2023); (26) *Lettieri v. Fed. Bureau of Investigation*, No. 23-CV-0708 (W.D.N.Y. filed July 17, 2023);

---

[3]     This case was transferred to the district court for the Western District of New York, where it was assigned case number 23-CV-1279 (W.D.N.Y. filed Dec. 8, 2023).

[4]     This case was transferred to the district court for the Northern District of New York, where it was assigned case number 23-CV-1547 (N.D.N.Y. filed Dec. 11, 2023).

(27) *Lettieri v. Dep't of Justice*, No. 23-CV-0704 (W.D.N.Y. filed July 17, 2023); (28) *Lettieri v. Dep't of Justice*, No. 23-CV-0707 (W.D.N.Y. filed July 17, 2023); (29) *Lettieri v. Dep't of Justice*, No. 23-CV-0705 (W.D.N.Y. filed July 17, 2023); (30) *Lettieri v. Fed. Bureau of Investigation*, No. 23-CV-0706 (W.D.N.Y. filed July 17, 2023); (31) *Lettieri v. Dep't of Justice*, No. 23-CV-0721 (W.D.N.Y. filed July 19, 2023); (32) *Lettieri v. Dep't of Justice*, No. 23-CV-0722 (W.D.N.Y. filed July 19, 2023); (33) *Lettieri v. Broome Cnty. Humane Soc'y*, No. 23-CV-0747 (W.D.N.Y. filed July 26, 2023); (34) *Lettieri v. Dep't of Justice*, No. 23-CV-0749 (W.D.N.Y. filed July 26, 2023); (35) *Lettieri v. Fed. Public Def.*, No. 23-CV-0748 (W.D.N.Y. filed July 26, 2023); (36) *Lettieri v. Suffolk Cnty. Police*, No. 23-CV-0757 (W.D.N.Y. filed July 27, 2023); (37) *Lettieri v. Dep't of Justice*, No. 23-CV-0762 (W.D.N.Y. filed July 28, 2023); (38) *Lettieri v. Dep't of Justice*, No. 23-CV-0771 (W.D.N.Y. filed July 31, 2023); (39) *Lettieri v. Dep't of Justice*, No. 23-CV-0774 (W.D.N.Y. filed Aug. 1, 2023); (40) *Lettieri v. W. Dist. of New York*, No. 23-CV-0770 (W.D.N.Y. filed July 31, 2023); (41) *Lettieri v. Dep't of Justice*, No. 23-CV-0788 (W.D.N.Y. filed Aug. 4, 2023); (42) *Lettieri v. Daniels*, No. 23-CV-0867 (W.D.N.Y. filed Aug. 21, 2023); (43) *Lettieri v. Dep't of Justice*, No. 23-CV-0865 (W.D.N.Y. filed Aug. 21, 2023); (44) *Lettieri v. Dep't of Justice*, No. 23-CV-0866 (W.D.N.Y. filed Aug. 21, 2023); (45) *Lettieri v. Auricchio*, No. 23-CV-0875 (W.D.N.Y. filed Aug. 22, 2023); (46) *Lettieri v. Vilardo*, No. 23-CV-6498 (W.D.N.Y. filed Aug. 28, 2023); (47) *Lettieri v. Four in One*, No. 23-CV-0898 (W.D.N.Y. filed Aug. 28, 2023);[5] (48) *Lettieri v. Dep't of Justice*, No. 23-CV-0897 (W.D.N.Y. filed Aug. 28, 2023); (49) *Lettieri v. Olivett Prods.*, No. 23-CV-0906 (W.D.N.Y.

---

[5]    This case was transferred to the district court for the Northern District of Ohio, where it was assigned case number 23-CV-1661 (N.D. Ohio filed Aug. 25, 2023).

filed Aug. 30, 2023);[6] (50) *Lettieri v. Reynolds*, No. 23-CV-0925 (W.D.N.Y. filed Sept. 1, 2023);

(51) *Lettieri v. Bonanno*, No. 23-CV-1081 (W.D.N.Y. filed Oct. 6, 2023); (52) *Lettieri v. Post*

*Consumer Brands*, No. 23-CV-1080 (W.D.N.Y. filed Oct. 6, 2023); (53) *Lettieri v. Powell*, No.

23-CV-1082 (W.D.N.Y. Oct. 6, 2023); (54) *Lettieri v. Aurrichio*, No. 23-CV-1121 (W.D.N.Y.

Oct. 25, 2023); (55) *Lettieri v. Hockwater*, No. 23-CV-1123 (W.D.N.Y. Oct. 25, 2023); (56)

*Lettieri v. City of Binghamton*, No. 23-CV-1122 (W.D.N.Y. filed Oct. 25, 2023); (57) *Lettieri v.*

*The Broome Cnty. Humane*, No. 23-CV-1223 (W.D.N.Y. filed Nov. 22, 2023); (58) *Lettieri v.*

*Keefe Grp.*, No. 23-CV-1224 (W.D.N.Y. filed Nov. 22, 2023); (59) *Lettieri v. City of*

*Binghamton*, No. 23-CV-1243 (W.D.N.Y. filed Nov. 29, 2023); (60) *Lettieri v. Broome Cnty.*

*Humane Soc'y*, No. 23-CV-1268 (W.D.N.Y. filed Dec. 7, 2023); (61) *Lettieri v. Broome Cnty.*

*Humane Soc'y*, No. 23-CV-1270 (W.D.N.Y. filed Dec. 7, 2023); (62) *Lettieri v. Wyoming Cnty.*

*Sheriffs*, No. 23-CV-1303 (W.D.N.Y. filed Dec. 18, 2023); (63) *Lettieri v. Fed. Marshals*, No.

23-CV-1305 (W.D.N.Y. filed Dec. 20, 2023); (64) *Lettieri v. Gunnip*, No. 23-CV-1306

(W.D.N.Y. filed Dec. 20, 2023); (65) *Lettieri v. Vilando*, No. 23-CV-1660 (N.D. Ohio filed Aug.

25, 2023);[7] (66) *Lettieri v. Vilando*, No. 23-CV-1686 (N.D. Ohio filed Aug. 29, 2023);[8] (67)

*Lettieri v. Northeast Ohio Corr. Ctr.*, No. 23-CV-1690 (N.D. Ohio filed Aug. 29, 2023); (68)

*Lettieri v. Fed. Marshals*, No. 23-CV-1872 (N.D. Ohio filed Sept. 26, 2023); (69) *Lettieri v. New*

*York State Troopers*, No. 23-CV-2077 (N.D. Ohio filed Oct. 23, 2023); (70) *Lettieri v. Fed.*

---

[6]    This case was transferred to the district court for the Northern District of Ohio, where it was assigned case number 23-CV-2028 (N.D. Ohio filed Oct. 16, 2023).

[7]    This case was transferred to the district court for the Western District of New York, where it was assigned case number 23-CV-6682 (W.D.N.Y. filed Dec. 1, 2023).

[8]    This case was transferred to the district court for the Western District of New York, where it was assigned case number 23-CV-6704 (W.D.N.Y. filed Dec. 11, 2023).

*Marshals*, No. 23-CV-2167 (N.D. Ohio filed Nov. 6, 2023); (71) *Lettieri v. Fed. Marshals*, No.

23-CV-2202 (N.D. Ohio filed Nov. 30, 2023); (72) *Lettieri v. Northeast Ohio Corr. Ctr.*, No. 24-

CV-0032 (N.D. Ohio filed Jan. 5, 2024); (73) *Lettieri v. Performance Food Grp.*, No. 24-CV-

0053 (E.D. Va. filed Jan. 18, 2024); (74) *Lettieri v. Fed. Marshals*, No. 23-CV-3317 (D.D.C.

filed Nov. 2, 2023); (75) *Lettieri v. The Broome Cnty. Humane Soc'y*, No. 23-CV-7777

(E.D.N.Y. filed Oct. 10, 2023); (76) *Lettieri v. Quinn*, No. 23-CV-7830 (E.D.N.Y. filed Oct. 16,

2023); and (77) *Lettieri v. T-Mobile*, No. 24-CV-0028 (W.D. Wash. filed Jan. 4, 2024).

Upon review of these actions, and consistent with the determinations reached by the

Honorable Hector Gonzalez in *Lettieri v. Broome Cnty. Humane Soc'y*, 20-CV-7777, 23-CV-

7830, 2023 WL 7017081, at *2 (E.D.N.Y. Oct. 25, 2023), *denying recons.*, 2023 WL 8003478,

(E.D.N.Y. Nov. 17, 2023), and the Honorable Lawrence J. Vilardo in *Lettieri v. Broome Cnty.*

*Humane Soc'y*, 23-CV-1223, 2023 WL 9066861, at *2 (W.D.N.Y. Dec. 4, 2023), and *Lettieri v.*

*Auricchio*, 23-CV-1121, 2023 WL 9066873, at *2 (W.D.N.Y. Dec. 4, 2023), this Court finds

that, as of the date that Plaintiff commenced this action, he had acquired at least three "strikes."[9]

As a result, Plaintiff's IFP Application must be denied unless it appears that the "imminent

danger" exception to the "three strikes" rule set forth in Section 1915(g) is applicable to this

action.

### B.    Applicability of the "Imminent Danger" Exception

The "imminent danger" exception protects a prison inmate exposed to potential serious

physical injury from the consequences of his earlier mistakes in filing frivolous litigation.

---

[9]    The actions in which Plaintiff acquired strikes are as follows: (1) *Lettieri v. W. Dist. of N.Y.*, 23-CV-0770 (W.D.N.Y. Sept. 11, 2023), Dkt. No. 7; (2) *Lettieri v. U.S. Dep't of Justice*, 23-CV-0866 (W.D.N.Y. Sept. 19, 2023), Dkt. No. 3; and (3) *Lettieri v. Vilardo*, 23-CV-6498 (W.D.N.Y. Sept. 21, 2023), Dkt. No. 3.

Generally speaking, the allegations relevant to this inquiry "are those in which [plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment." *Chavis v. Chappius*, 618 F.3d 162, 165 (2d Cir. 2010). The Second Circuit has described the nature of the Court's inquiry regarding imminent danger as follows: "although the feared physical injury must be serious, we should not make an overly detailed inquiry into whether the allegations qualify for the exception, because § 1915(g) concerns only a threshold procedural question, while [s]eparate PLRA provisions are directed at screening out meritless suits early on." *Chavis*, 618 F.3d at 169-70 (*quoting Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007)) (internal quotation marks omitted).

"[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint – in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d Cir. 2007); *Akassy v. Hardy*, 887 F.3d 91, 96 (2d Cir. 2018). However, "allegations of past violence can satisfy the imminent danger exception when, for example, the past harms are part of an ongoing pattern of acts." *Carter v. New York State*, 20-CV-5955, 2020 WL 4700902, at *1 (S.D.N.Y. Aug. 12, 2020) (citing *Chavis*, 618 F.3d at 170 (holding that "[a]n allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception.")).

In addition, "§ 1915(g) allows a three-strikes litigant to proceed [IFP] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges." *Pettus*, 554 F.3d at 296. In deciding whether such a nexus exists, the Second Circuit

has instructed the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would redress that injury." *Id.* at 298-99.

In this case, the Complaint alleges that approximately one year before filing this action, Plaintiff's house was burned down by non-party individuals. (Dkt. No. 1 at 5.) These allegations fail to plausibly suggest that Plaintiff was "under imminent danger of serious physical injury" when he signed his complaint on December 18, 2023. Therefore, Plaintiff is barred from proceeding IFP under Section 1915.

## III.    BAR ORDER

### A.    Legal Standard

Courts have always recognized that they may resort to restrictive measures when responding to vexatious litigants. *In re Martin-Trigona*, 9 F.3d 226, 228-29 (2d Cir. 1993) (noting that the Supreme Court and other Circuits have imposed restrictive measures). The Court has the obligation to protect the public and the efficient administration of justice from individuals who have a history of vexatious and harassing litigation because it imposes needless expense on the parties and an unnecessary burden on the court. *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). In this context, courts have accepted the need for permanent injunctions as a result of extraordinary patterns of vexatious, harassing, and baffling litigation practices. *In re Aarismaa*, 233 B.R. 233, 247 (N.D.N.Y. 1999) (McAvoy, C.J.); *Toro v. Depository Trust Co.*, 97-CV-5383, 1997 WL 752729, at *4 (S.D.N.Y. Dec. 4, 1997) (identifying the All Writs Act as a legal basis to impose sanctions and enjoin a plaintiff who abuses the judicial process).

Under the All Writs Act, 28 U.S.C. § 1651, a court may sanction a vexatious litigant who abuses the judicial process by enjoining him from pursuing future litigation without leave of the court. *Malley v. New York City Bd. of Educ.*, 112 F.3d 69, 69-70 (2d Cir. 1997); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004). An enjoinder may be permanent or may impose the less drastic remedy of a "leave to file" requirement. *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) (noting the court's ability to levy a leave to file requirement); *Raffe v. John Doe*, 619 F. Supp. 891 (S.D.N.Y. 1985) (granting a permanent injunction restraining the plaintiff from filing any further actions); *In re Aarismaa*, 233 B.R. at 247 (observing that such "restrictive measure[s] have included foreclosing the filings of pleadings in a particular case or requiring that leave of court first be sought").

Before regulating a truculent and persistent litigant by restricting future access to the court, a court should consider

> (1) the litigant's history of the litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, and in particular whether the litigant has a good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Toro v. Depository Trust Co.*, 1997 WL 752729, at *4 (citing *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

### B.    Application

Plaintiff has displayed a perpetual abuse of the judicial process in this District and others. As to the first relevant factor, Plaintiff has filed eight complaints in the Northern District over the past five months. Several of the complaints, like the one currently pending before this court, were filed after Plaintiff received his third strike for purposes of Section 1915. Moreover, on

December 4, 2023, Chief United States District Judge Lawrence J. Vilardo in the district court

for the Western District of New York ("W.D.N.Y.") found that Plaintiff engaged in a pattern of

abuse of the judicial process and prohibited Plaintiff from filing any future cases in W.D.N.Y.

without (1) prepaying the filing fee and administrative fees, or (2) submitting a complete motion

for leave to proceed IFP.  *In re David C. Lettieri*, No. 23-MC-0032 (W.D.N.Y. filed Sept. 5,

2023), Dkt. No. 11.  On January 19, 2024, Chief Judge Vilardo barred Plaintiff, for one year,

from filing any future *pro se* civil actions in W.D.N.Y. without first obtaining the court's

permission.  (*Id*. at Dkt. No. 18.)  In addition, Chief Judge Vilardo ordered that Plaintiff be fined

in the amount of $500.00 each time the court denies three requests for permission to file a new

action and the $500.00 fine must be paid in full before Plaintiff may file additional requests for

permission to file a new case.  (*Id*. at 4.)  Chief Judge Vilardo noted that "[o]ver the past year,

Lettieri's pattern of vexatious filings and baseless appeals has created a backlog of cases and

motions."  *In re David C. Lettieri*, No. 23-MC-0032 (W.D.N.Y. filed Sept. 5, 2023), Dkt. No. 11

at 3.  Hence, Plaintiff has an extensive history of filing vexatious, harassing, or duplicative

lawsuits.

Second, Plaintiff cannot possibly have an objective good-faith expectation of prevailing

in his lawsuits.  Despite being well informed of his three strikes, Plaintiff continues to check the

box on his form complaint that he has not had a case dismissed based on the "three strikes rule."

(*Compare* Dkt. No. 1 at 8, and *Lettieri v. Brigueal*, No. 23-CV-1597, Dkt. No. 1 at 8, *with*

*Lettieri v. Brigueal*, No. 23-CV-1597, 2024 WL 196724, at *2 n.4 (N.D.N.Y. Jan. 17, 2024)

(Lovric, M.J.) (noting that Plaintiff accumulated three strikes as of September 21, 2023), *In re*

*David C. Lettieri*, No. 23-MC-0032 (W.D.N.Y. filed Sept. 5, 2023), Dkt. No. 11 at 2 n.2 (noting

that Plaintiff "has had more than three actions dismissed and thus is subject to what is commonly

known as the three strikes rule."), and *Lettieri v. Auricchio*, 23-CV-1121, 2023 WL 9066873, at *2 (W.D.N.Y. Dec. 4, 2023) (denying Plaintiff's IFP application because he had three strikes and failed to allege facts plausibly suggesting that he faced imminent danger of serious physical injury).  Moreover, it appears as though Plaintiff may be filing actions in this district in hopes the Court will not be aware of his three strikes and to circumvent the filing injunction in the W.D.N.Y.  *See Lettieri v. Garver*, No. 23-CV-1421 (N.D.N.Y. filed Nov. 15, 2023), Dkt. No. 4 (transferring action to W.D.N.Y.).  Further, Chief Judge Vilardo noted that, in W.D.N.Y., Plaintiff "began filing habeas petitions to circumvent the three strikes rule that applies to section 1983 actions."  *In re David C. Lettieri*, No. 23-MC-0032 (W.D.N.Y. filed Sept. 5, 2023), Dkt. No. 18 at 4 n.3.

Third, although Plaintiff is a pro se litigant, he has extensive litigation experience in the Northern District of New York, W.D.N.Y., and elsewhere.

Fourth, Plaintiff has posed an unnecessary burden on the court because "every paper [he has] filed with the Clerk of this Court, no matter how repetitious or frivolous, [has] require[d] some portion of the institution's limited resources."  *In re McDonald*, 489 U.S. 180, 184 (1989).

Fifth, "in light of plaintiff's litigation history, it does not appear that any other sanction, short of an injunction, will be adequate to protect the court from [P]laintiff's insatiable appetite for continued litigation."  *Smith v. Jackson*, 21-CV-0005, 2021 WL 3518327, at *6 (N.D.N.Y. Jan. 11, 2021) (Lovric, M.J.) (citing *Ulysses I & Co., Inc. v. Feldstein*, No. 01-CV-3102, 2002 WL 1813851 (S.D.N.Y. Aug. 8, 2002), *aff'd sub nom, Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27 (2d Cir. 2003)), *report and recommendation adopted*, 2021 WL 2775003 (N.D.N.Y. July 2, 2021) (D'Agostino, J.).

Accordingly, pursuant to 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings, I recommend that Plaintiff be prohibited from making any future pro se filings in this District without prior leave of the Chief Judge. *See Yefimova v. Trustco Bank*, 17-CV-0730, 2017 WL 4216987, at *3-4 (N.D.N.Y. July 31, 2017) (Stewart, M.J.) (recommending a bar order where the plaintiff was deemed a persistent, frivolous litigator), *report and recommendation adopted*, 2017 WL 4157337 (N.D.N.Y. Sept. 18, 2017) (Suddaby, C.J.).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **DENIED**; and it is further respectfully

**RECOMMENDED** that should Plaintiff wish to proceed with this action, he be required to pay the $405.00 filing and administrative fees **within thirty (30) days** from the filing of an Order by the assigned District Judge adopting this Order and Report-Recommendation. It is recommended that should Plaintiff fail to pay the full filing and administrative fees **within thirty (30) days** of the date of such an order, the case be dismissed without prejudice and without further order of the Court; and it is further respectfully

**RECOMMENDED** that this matter be **REFERRED** to Chief Judge Brenda K. Sannes to issue a pre-filing injunction permanently enjoining Plaintiff from filing any other *pro se* actions in this District without leave of the Chief Judge; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order and report-recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[10]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[11]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: January 26, 2024
      Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[10]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[11]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2023 WL 8003478
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

David Carmine LETTIERI, Plaintiff,
v.
The BROOME COUNTY HUMANE
SOCIETY, Department of Justice, and
Federal Bureau of Investigation, Defendants.
David Carmine Lettieri, Plaintiff,
v.
James Quinn Auricchio, Michael J. Roemer, Lawrence
Joseph Vilardo, and Paul E. Bonanno, Defendants.

23-CV-07777 (HG) (MMH), 23-CV-07830 (HG) (MMH)
|
Signed November 17, 2023

**Attorneys and Law Firms**

David Carmine Lettieri, Lockport, NY, Pro Se.

## **MEMORANDUM & ORDER**

HECTOR GONZALEZ, United States District Judge:

 **\*1**  The Court previously dismissed without prejudice these two lawsuits filed by Plaintiff, who is incarcerated in a county jail in the Western District of New York while awaiting sentencing for a conviction of enticement of a minor in violation of 18 U.S.C. § 2422(b). *See United States v. Lettieri*, No. 21-cr-20, 2023 WL 6531514, at \*1 (W.D.N.Y. Oct. 6, 2023) (denying plaintiff's post-trial motions for judgment of acquittal or for a new trial). The Court dismissed both of these cases, pursuant to the three-strikes rule in 28 U.S.C. § 1915(g), because Plaintiff sought *in forma pauperis* status but had already brought three lawsuits that had been dismissed *sua sponte* as frivolous or for failure to state a claim. Plaintiff has responded by filing, in both cases, motions for reconsideration and, alternatively, notices of appeal.

The Court denies Plaintiff's motions for reconsideration. Plaintiff incorrectly argues that the prison mailbox rule means that each of these two cases was deemed filed before he received the third dismissal relied upon by the Court to invoke the three-strikes rule. But when Plaintiff signed each of the complaints in these two cases, he dated them

September 25 and 26, respectively, so those are the earliest dates that he could have delivered them to the authorities where he is incarcerated to be mailed to the Court. The latest of the dismissals in Plaintiff's prior cases relied upon by the Court—*i.e.*, his third strike—came in a decision dated September 21, 2023, and a judgment was entered the same day. Therefore, Plaintiff had accumulated three strikes before he delivered either of his complaints in these two cases to authorities at the facility where he is incarcerated. Plaintiff's confidence that at least one of those decisions will be overturned on appeal does not prevent him from having accumulated three strikes. The Supreme Court has held that, when counting whether a plaintiff has received three strikes, "the courts must count [a] dismissal even though it remains pending on appeal." *Coleman v. Tollefson*, 575 U.S. 532, 534 (2015). Plaintiff has not cured his ineligibility for *in forma pauperis* status by paying the Court's filing fee, so the Court's dismissal of these two cases based on the three-strikes rule still stands.

In each motion for reconsideration, Plaintiff attempts to argue why venue would be proper in this District. For example, he argues that the dog that the Broome County Humane Society allegedly stole from a relative at a location in the Northern District of New York previously lived most of its life in Queens County. He also asserts that the judges and attorneys involved with his criminal trial in the Western District of New York were part of a wide-ranging "RICO conspiracy," but he provides no explanation as to how some aspect of that alleged conspiracy supposedly took place in this District. The Court does not find either of these two venue arguments to be valid. But even if Plaintiff's attempts to demonstrate proper venue in this District were successful, the Court still would not reconsider the dismissal of Plaintiff's cases because showing that venue is proper would not fix Plaintiff's ineligibility for *in forma pauperis* status and his failure to pay the filing fees to commence these two cases.

## **CONCLUSION**

 **\*2**  For the reasons set forth above, Plaintiff's motions for reconsideration are denied. Plaintiff's cases remain dismissed without prejudice pursuant to 28 U.S.C. § 1915(g). The Clerk of Court is respectfully directed to mail a copy of this order to Plaintiff. Since Plaintiff filed notices of appeal concurrently with his motions for reconsideration, those notices of appeal become effective as of the date of this

order denying the motions. *See* Fed. R. App. P. 4(a)(4)(B) (i). However, Plaintiff must either pay the $505.00 appellate filing fee for each case or obtain from the Second Circuit leave to appeal *in forma pauperis* because the Court reiterates its prior holding that any appeals from the Court's prior dismissal order, or this order denying Plaintiff's motions for reconsideration, would not be taken in good faith, and the Court therefore denies *in forma pauperis* status for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). Alternatively, since the Court's

dismissal of these cases is without prejudice, Plaintiff may commence these lawsuits by filing new complaints in a district where venue would be proper and by paying that district's filing fee.

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 8003478

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

Appeal Filed by  Lettieri v. The Broome County Humane Society,  2nd Cir.,
December 27, 2023

2023 WL 9066861
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

David C. LETTIERI, Plaintiff,

v.

The BROOME COUNTY HUMANE
SOCIETY, et al.,[1] Defendant.

23-CV-1223-LJV
|
Signed December 4, 2023

**Attorneys and Law Firms**

David C. Lettieri, Youngstown, OH, Pro Se.

ORDER

LAWRENCE J. VILARDO, UNITED STATES DISTRICT
JUDGE

**\*1**  The *pro se* plaintiff, David C. Lettieri, was a prisoner
incarcerated at the Niagara County Jail when he commenced
this action under  42 U.S.C. § 1983. Docket Item 1. He
asserts claims for "unlawful search and se[iz]ure," "excessive
force," and violation of his right to "[d]ue process." *Id.* at 5.

Lettieri has moved to proceed *in forma pauperis* ("IFP")
under  28 U.S.C. § 1915(a)- (b). Docket Item 2. For the
reasons that follow, Lettieri's motion to proceed IFP is denied.
Therefore, his complaint will be dismissed without prejudice
unless he pays the required $402.00 filing and administrative
fees.[2]

**LEGAL PRINCIPLES**

Under  28 U.S.C. § 1915, as amended by the Prison
Litigation Reform Act of 1995, a prisoner who cannot afford
to pay court filing fees may proceed IFP and repay the
fees according to a "structured payment plan."  *Chavis v.*

*Chappius*, 618 F.3d 162, 167 (2d Cir. 2010);  28 U.S.C.
§ 1915(a)- (b). But certain prisoners—"so-called 'frequent
filers' "—are barred from filing IFP.  *Chavis*, 618 F.3d at
167. The statute defines such litigants as those who have,

> on 3 or more prior occasions, while
> incarcerated or detained in any facility,
> brought an action or appeal ... that
> was dismissed on the grounds that it
> is frivolous, malicious, or fails to state
> a claim upon which relief may be
> granted, unless the prisoner is under
> imminent danger of serious physical
> injury.

 28 U.S.C. § 1915(g).

Courts refer to this provision as the "three strikes rule."
*Malik v. McGinnis*, 293 F.3d 559, 560 (2d Cir. 2002). Claims
dismissed because of judicial or prosecutorial immunity are
"frivolous" and therefore "strikes" under  28 U.S.C. §
1915(g). *See*  *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir.
2011) (judicial immunity);  *Collazo v. Pagano*, 656 F.3d 131,
134 (2d Cir. 2011) (prosecutorial immunity). Likewise, any
dismissal for failure to state a claim is a "strike" regardless
of whether the dismissal was with or without prejudice. *See*
*Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1727 (2020).

A prisoner who has accumulated "three strikes" may proceed
IFP only if the complaint alleges that "the prisoner is under
imminent danger of serious physical injury."  28 U.S.C.
§ 1915(g). A danger that has "dissipated by the time [the]
complaint is filed" is not "imminent." *Abreu v. Brown*, 317
F. Supp. 3d 702, 704 (W.D.N.Y. 2018) (quoting  *Chavis*,
618 F.3d at 169); *see Malik*, 293 F.3d at 563 (holding
that "by using the term 'imminent,' Congress indicated that
it wanted to include a safety valve for the 'three strikes'
rule to prevent impending harms, not those harms that had
already occurred" (alteration omitted)). So to be entitled to
the exception, the prisoner must adequately allege a danger
that "exist[s] at the time the complaint is filed." *Malik*, 293
F.3d at 563.

## DISCUSSION

**\*2**  The three strikes rule squarely applies here. In addition to this case, Lettieri has filed more than 50 actions in this Court in the past year. *See Lettieri v. Dep't of Just.*, Case. No. 23-cv-865, Docket Item 3, at 1 n.1 (W.D.N.Y. Oct. 19, 2023). At least three of those cases were dismissed because the defendants were immune from suit. *See Lettieri v. Vilardo*, Case No. 23-cv-6498, Docket Item 3 (W.D.N.Y. Sept. 21, 2023) (dismissing complaint due to judicial immunity); *Lettieri v. Western Dist. of New York*, Case No. 23-cv-770, Docket Item 7 (W.D.N.Y. Sept. 11, 2023) (same); *Lettieri v. Dep't of Just.*, Case No. 23-cv-866, Docket Item 3 (W.D.N.Y. Sept. 19, 2023) (dismissing complaint due to prosecutorial immunity).[3]  Because the Second Circuit has held that dismissals based on immunity count as "strikes," *see Mills, 645 F.3d at 177; Collazo, 656 F.3d at 134*, Lettieri has accumulated three strikes under 28 U.S.C. § 1915(g).[4]

For that reason, Lettieri cannot proceed IFP unless he faces "imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *see also Malik, 293 F.3d at 562*. But no reading of the complaint could suggest that is the case.[5]  Therefore, Lettieri is barred from proceeding IFP under section 1915.

## ORDER

Lettieri's motion to proceed IFP, Docket Item 2, therefore is DENIED. If Lettieri wants to pursue this action, he must pay the $402.00 filing and administrative fees. If Lettieri fails to pay the full filing and administrative fees **within 30 days of the date of this order**, this case will be dismissed without prejudice without further order of the Court.

SO ORDERED.

## All Citations

Slip Copy, 2023 WL 9066861

## Footnotes

1      The complaint—and thus the official case caption—names "The Broome County Humane" instead of "The Broome County Humane Society," which is the entity that Lettieri seems to intend to sue. Docket Item 1 at 1, 5. The Clerk of the Court shall correct the caption accordingly. The other defendants named are the Department of Justice and the Federal Bureau of Investigation ("FBI"). *Id.*

2      The fee to file a civil action is $350.00. Effective May 1, 2013, the Judicial Conference of the United States added an administrative fee of $50.00 to the cost of filing a civil lawsuit in district court. *See* September 2012 Report of the Proceedings of the Judicial Conference of the United States, available at http://www.uscourts.gov/about-federal-courts/reports-proceedings-judicial-conference-us.

       Effective December 1, 2020, this fee was increased to $52.00. *See* District Court Miscellaneous Fee Schedule, https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

3      Those three cases are not the only ones filed by Lettieri that have been dismissed for reasons that likely are "strikes." *See, e.g., Lettieri v. Daniels*, Case No. 23-cv-867, Docket Item 3 (W.D.N.Y. Oct. 16, 2023) (dismissing complaint for failure to state a claim); *Lettieri v. Auricchio*, Case No. 23-cv-875, Docket Item 3 (W.D.N.Y. Oct. 11, 2023) (same); *Lettieri v. Reynolds*, Case No. 23-cv-925, Docket Item 4 (W.D.N.Y. Oct. 17, 2023) (same); *Lettieri v. Dep't of Just.*, Case No. 23-cv-897, Docket Item 3 (W.D.N.Y. Oct. 10, 2023) (dismissing complaint due to prosecutorial immunity). In fact, none of Lettieri's civil complaints that this Court

has screened under 📙 28 U.S.C. §§ 1915(e)(2)(b) and 1915A have raised colorable claims. So Lettieri likely has many more than three strikes. But three are enough. 📙 28 U.S.C. § 1915(g).

4    Three courts, including this one, have found that Lettieri has garnered three strikes under 📙 section 1915. *See Lettieri v. Vilardo*, Case No. 23-cv-6563 (W.D.N. Y Oct. 10, 2023) (Wolford, C.J.) (denying Lettieri's motion to proceed IFP under the three strikes rule); *Lettieri v. Broome Cnty. Humane Soc'y*, 2023 WL 7017081, at *2-3 (E.D.N.Y. Oct. 25, 2023) (Gonzalez, J.) (same); *Lettieri v. Hockwater*, Case No. 23-cv-1123, Docket Item 3 (W.D.N.Y. Nov. 13, 2023) (Vilardo, J.) (same).

5    Lettieri alleges that "[t]he FBI [l]et the Broome County Humane Society [break] [i]nto [his] [h]ouse and take whatever they wanted," including "a rat." Docket Item 1 at 5. He then alleges that "they" are "trying to extort money [f]or [i]llegal[ly] tak[ing] care of the [r]at," although he does not clarify who "they" are. *Id.* Although it is difficult to understand the complaint in places, no part of it suggests that Lettieri was in any "imminent danger of serious physical injury" at the time of filing. 📙 28 U.S.C. § 1915(g).

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

Appeal Filed by  Lettieri v. Auricchio,  2nd Cir.,  December 27, 2023

2023 WL 9066873

Only the Westlaw citation is currently available.

United States District Court, W.D. New York.

David C. LETTIERI, Plaintiff,

v.

James Quinn AURICCHIO, [1]  Defendant.

23-CV-1121-LJV

|

Signed December 4, 2023

**Attorneys and Law Firms**

David C. Lettieri, Lockport, NY, Pro Se.

ORDER

LAWRENCE J. VILARDO, UNITED STATES DISTRICT JUDGE

 **\*1**  The *pro se* plaintiff, David C. Lettieri, was a prisoner incarcerated at the Niagara County Jail when he commenced this action under  42 U.S.C. § 1983. Docket Item 1. He alleges that his former defense attorney, James Quinn Auricchio, violated his right to due process and provided ineffective assistance of counsel. [2]  Docket Item 1 at 5.

Lettieri has moved to proceed *in forma pauperis* ("IFP") under  28 U.S.C. § 1915(a)- (b). Docket Item 2. For the reasons that follow, Lettieri's motion to proceed IFP is denied. Therefore, his complaint will be dismissed without prejudice unless he pays the required $402.00 filing and administrative fees. [3]

**LEGAL PRINCIPLES**

Under  28 U.S.C. § 1915, as amended by the Prison Litigation Reform Act of 1995, a prisoner who cannot afford to pay court filing fees may proceed IFP and repay the fees according to a "structured payment plan." *Chavis v.*

*Chappius,* 618 F.3d 162, 167 (2d Cir. 2010);  28 U.S.C. § 1915(a)- (b). But certain prisoners—"so-called 'frequent filers' "—are barred from filing IFP. *Chavis,* 618 F.3d at 167. The statute defines such litigants as those who have,

> on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal ... that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

 28 U.S.C. § 1915(g).

Courts refer to this provision as the "three strikes rule." *Malik v. McGinnis,* 293 F.3d 559, 560 (2d Cir. 2002). Claims dismissed because of judicial or prosecutorial immunity are "frivolous" and therefore "strikes" under  28 U.S.C. § 1915(g). See  *Mills v. Fischer,* 645 F.3d 176, 177 (2d Cir. 2011) (judicial immunity);  *Collazo v. Pagano,* 656 F.3d 131, 134 (2d Cir. 2011) (prosecutorial immunity). Likewise, any dismissal for failure to state a claim is a "strike" regardless of whether the dismissal was with or without prejudice. *See Lomax v. Ortiz-Marquez,* 140 S. Ct. 1721, 1727 (2020).

 **\*2**  A prisoner who has accumulated "three strikes" may proceed IFP only if the complaint alleges that "the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g). A danger that has "dissipated by the time [the] complaint is filed" is not "imminent." *Abreu v. Brown,* 317 F. Supp. 3d 702, 704 (W.D.N.Y. 2018) (quoting  *Chavis,* 618 F.3d at 169); *see Malik,* 293 F.3d at 563 (holding that "by using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred" (alteration omitted)). So to be entitled to the exception, the prisoner must adequately allege a danger that "exist[s] at the time the complaint is filed." *Malik,* 293 F.3d at 563.

## DISCUSSION

The three strikes rule squarely applies here. In addition to this case, Lettieri has filed more than 50 actions in this Court in the past year. *See Lettieri v. Dep't of Just.*, Case. No. 23-cv-865, Docket Item 3, at 1 n.1 (W.D.N.Y. Oct. 19, 2023). At least three of those cases were dismissed because the defendants were immune from suit. *See Lettieri v. Vilardo*, Case No. 23-cv-6498, Docket Item 3 (W.D.N.Y. Sept. 21, 2023) (dismissing complaint due to judicial immunity); *Lettieri v. Western Dist. of New York*, Case No. 23-cv-770, Docket Item 7 (W.D.N.Y. Sept. 11, 2023) (same); *Lettieri v. Dep't of Just.*, Case No. 23-cv-866, Docket Item 3 (W.D.N.Y. Sept. 19, 2023) (dismissing complaint due to prosecutorial immunity). [4] Because the Second Circuit has held that dismissals based on immunity count as "strikes," *see Mills*, 645 F.3d at 177; *Collazo*, 656 F.3d at 134, Lettieri has accumulated three strikes under 28 U.S.C. § 1915(g). [5]

For that reason, Lettieri cannot proceed IFP unless he faces "imminent danger of serious physical injury." 28 U.S.C. §

1915(g); *see also Malik*, 293 F.3d at 562. But his complaint does not even suggest that is the case. Instead, his complaint alleges an injury in connection with his criminal trial, which ended months ago. [6] Therefore, Lettieri is barred from proceeding IFP under section 1915.

## ORDER

**\*3** Lettieri's motion to proceed IFP, Docket Item 2, therefore is DENIED. If Lettieri wants to pursue this action, he must pay the $402.00 filing and administrative fees. If Lettieri fails to pay the full filing and administrative fees **within 30 days of the date of this order**, this case will be dismissed without prejudice without further order of the Court.

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 9066873

## Footnotes

1    Lettieri's complaint, and thus the official case caption, misspelled Auricchio's name, which appears correctly here. The Clerk of the Court shall correct the caption accordingly.

2    On June 14, 2023, a jury found Lettieri guilty on one count of enticement of a minor in violation of 18 U.S.C. § 2422(b). *See United States v. Lettieri*, Case No. 21-cr-20, Docket Items 146, 150 (W.D.N.Y. June 14, 2023). Auricchio represented Lettieri in this case from April 15, 2021, *see id.*, Docket Item 17 (W.D.N.Y. Apr. 15, 2021), until March 3, 2022, *id.*, Docket Item 38 (W.D.N.Y. Mar. 3, 2022).

3    The fee to file a civil action is $350.00. Effective May 1, 2013, the Judicial Conference of the United States added an administrative fee of $50.00 to the cost of filing a civil lawsuit in district court. *See* September 2012 Report of the Proceedings of the Judicial Conference of the United States, available at http://www.uscourts.gov/about-federal-courts/reports-proceedings-judicial-conference-us. Effective December 1, 2020, this fee was increased to $52.00. *See* District Court Miscellaneous Fee Schedule, https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

4    Those three cases are not the only ones filed by Lettieri that have been dismissed for reasons that likely are "strikes." *See, e.g.*, *Lettieri v. Daniels*, Case No. 23-cv-867, Docket Item 3 (W.D.N.Y. Oct. 16, 2023) (dismissing complaint for failure to state a claim); *Lettieri v. Auricchio*, Case No. 23-cv-875, Docket Item 3 (W.D.N.Y. Oct. 11, 2023) (same); *Lettieri v. Reynolds*, Case No. 23-cv-925, Docket Item 4 (W.D.N.Y. Oct. 17, 2023) (same); *Lettieri v. Dep't of Just.*, Case No. 23-cv-897, Docket Item 3 (W.D.N.Y. Oct. 10, 2023) (dismissing complaint due to prosecutorial immunity). In fact, none of Lettieri's civil complaints that this Court

has screened under 📁 28 U.S.C. §§ 1915(e)(2)(b) and 1915A have raised colorable claims. So Lettieri likely has many more than three strikes. But three are enough. 📁 28 U.S.C. § 1915(g).

5    Three courts, including this one, have found that Lettieri has garnered three strikes under 📁 section 1915. *See Lettieri v. Vilardo*, Case No. 23-cv-6563, Docket Item 3 (W.D.N.Y. Oct. 10, 2023) (Wolford, C.J.) (denying Lettieri's motion to proceed IFP under the three strikes rule); *Lettieri v. Broome Cnty. Humane Soc'y*, 2023 WL 7017081, at *2-3 (E.D.N.Y. Oct. 25, 2023) (Gonzalez, J.) (same); *Lettieri v. Hockwater*, Case No. 23-cv-1123, Docket Item 3 (W.D.N.Y. Nov. 13, 2023) (Vilardo, J.) (same).

6    Lettieri sues Auricchio for violation of his due process rights and for ineffective assistance of counsel. Docket Item 1 at 5. He alleges that he was shown an "affidavit" that was purportedly signed by him but that he "[d]id not sign anything and can prove that the signature was [f]orged." *Id.* at 8. He argues that this "show[s]" that Auricchio "committed a crime." *Id.* Those assertions do not suggest that Lettieri was in any "imminent danger of serious physical injury" when he filed the complaint. *See* 📁 28 U.S.C. § 1915(g).

---

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 23 of 67

Carter v. New York State, Not Reported in Fed. Supp. (2020)

2020 WL 4700902
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

David CARTER, Plaintiff,
v.
NEW YORK STATE; C.O. Morges, Downstate
Correctional Facility; C.O. Melendez,
Downstate Correctional Facility, Defendants.

20-CV-5955 (CM)
|
Signed 08/12/2020

**Attorneys and Law Firms**

David Carter, East Elmhurst, NY, pro se.

ORDER OF DISMISSAL UNDER 28 U.S.C. § 1915(g)

COLLEEN McMAHON, Chief United States District Judge:

**\*1** Plaintiff, currently detained at the George R. Vierno Center in the custody of the New York City Department of Correction (DOC), filed this action *pro se* in the United States District Court for the Northern District of New York, which transferred it here. Plaintiff seeks to proceed without prepayment of fees, that is, *in forma pauperis* ("IFP"). Plaintiff is barred, however, from filing any new action IFP while a prisoner. *See Carter v. New York City John Doe Corr. Officer*, ECF 1:16-CV-3466, 6 (S.D.N.Y. Aug. 25, 2016). That order relied on 28 U.S.C. § 1915(g), which provides that:

> In no event shall a prisoner bring a civil action [IFP] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

"[A] prisoner can proceed IFP even after incurring three strikes if his complaint alleges an 'imminent danger of serious physical injury.' " *Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010) (quoting 28 U.S.C. § 1915(g)). Moreover, courts "should not make an overly detailed inquiry into whether the allegations qualify for the exception" because § 1915(g) "concerns only a threshold procedural question" about when payment for the filing fee is to be made. *Id.* Plaintiff alleges that on May 14, 2019, Correction Officer Morges deliberately pushed him down a stairwell at Great Meadow Correctional Facility. Correction Officer Melendez then allegedly helped Correction Officer Morges further physically assault Plaintiff at the bottom of the stairwell. [1]

In considering whether a prisoner's complaint falls within the imminent danger exception, "it is not sufficient to allege that 'harms ... had already occurred' " before the complaint was filed. *Akassy v. Hardy*, 887 F.3d 91, 96 (2d Cir. 2018); *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) ("[A] three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed."). But allegations of past violence can satisfy the imminent danger exception when, for example, the past harms are part of an ongoing pattern of acts. *Chavis*, 618 F.3d at 170.

Plaintiff's allegations that he suffered a past assault while incarcerated at Downstate Correctional Facility do not suggest that he currently faces an imminent danger. Plaintiff was incarcerated at Great Meadow Correctional Facility when he filed this complaint in the United States District Court Northern District of New York, and he is currently detained at GRVC in DOC custody. Plaintiff makes no allegation suggesting that this May 2019 incident involving two correction officers at Downstate Correctional Facility is part of a continuing pattern of ongoing acts.

**\*2** The Court therefore denies Plaintiff's request to proceed IFP in this action because he is barred under § 1915(g) and the complaint does not show that he faces imminent danger. Plaintiff therefore must prepay the $350.00 filing fee to proceed with this action.

Carter v. New York State, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 24 of 67

**CONCLUSION**

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. The Court denies Plaintiff's request to proceed IFP, and the complaint is dismissed without prejudice under the PLRA's "three-strikes" rule. *See* 28 U.S.C. § 1915(g). [2] Plaintiff remains barred from filing any future action IFP while in custody, unless he is under imminent threat of serious physical injury. [3] *Id.*

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See* *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 4700902

**Footnotes**

1    The Court previously dismissed Plaintiff's April 30, 2020 complaint, which appears to have brought claims arising from the same incident at Downstate Correctional Facility. *See Carter v. Morges*, No. 20-CV-3367 (CM) (S.D.N.Y. May 18, 2020).

2    Plaintiff may commence a new action by paying the filing fee. If Plaintiff does so, that complaint will be reviewed under 28 U.S.C. § 1915A, which requires the Court to dismiss *any* civil rights complaint from a prisoner if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

3    The Court may bar any vexatious litigant (including a nonprisoner) from filing future actions (even if the filing fee is paid) without first obtaining leave from the Court. *See In re Martin-Trigona*, 9 F.3d 226, 227-30 (2d Cir. 1993) (discussing sanctions courts may impose on vexatious litigants, including "leave of court" requirement).

Toro v. Depository Trust Co., Not Reported in F.Supp. (1998)

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 25 of 67

1998 WL 965984

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Charles A. TORO, Plaintiff,

v.

DEPOSITORY TRUST COMPANY, Stuart

Fishbein and Lori Klebous–Zivny, Defendants.

No. 98 CIV. 1268(MBM).

|

March 11, 1998.

*** Start Section

...


ORDER

MUKASEY, D.J.

 **\*1** This Title VII action for employment discrimination
was filed in the White Plains division of this court in
violation of an order issued by Judge Scheindlin in *Toro
v. Depository Trust Co.,* 97 Civ. 5383, 1997 WL **752729**
(S.D.N.Y. Dec. 4, 1997), dismissing a prior action of his
against these defendants and stating that "plaintiff is enjoined
from commencing any further employment discrimination
claims against these defendants except by order of this Court."
*Id.* at \*6. Not only has there been no order permitting this case
to be filed, but this plaintiff has been indicted in this district
for forging Judge Scheindlin's signature on orders purporting
to rescind her dismissal of the referenced case. Accordingly,
the complaint is dismissed, and the Clerk is directed to accept
no further filings from this plaintiff of any kind other than
those necessary (i) to prosecute an appeal, and (ii) to respond
to this order as set forth in the next parargaph hereof.

Plaintiff is directed to...

2024 WL 196724
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

DAVID C. LETTIERI, Plaintiff,

v.

JENELLE BRIGUEAL, Defendant.

3:23-CV-1597 (AMN/ML)
|
Filed 01/17/2024

**Attorneys and Law Firms**

APPEARANCES:

DAVID C. LETTIERI, Plaintiff, Pro Se, Niagara County Jail, 5526 Niagara Street Ex., Lockport, New York 149094

**ORDER and REPORT-RECOMMENDATION**

Miroslav Lovric U.S. Magistrate Judge

**I. BACKGROUND**

**A. Procedural History**

**\*1** Plaintiff David C. Lettieri ("Plaintiff") commenced this civil rights action *pro se* on December 18, 2023, on a form complaint alleging that his rights were violated by Defendant Jenelle Brigueal ("Defendant"). (Dkt. No. 1.) Plaintiff did not pay the filing fee for this action and sought leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

On December 19, 2023, the undersigned denied Plaintiff's motion for leave to proceed IFP because his submission was incomplete. (Dkt. No. 4.) The undersigned's order directed that "should Plaintiff wish to proceed with this action, he must either (i) pay the $405.00 filing fee, or (ii) submit a completed, signed, and certified inmate IFP application in accordance with this Decision and Order **within thirty (30) days** from the date of the filing of this Decision and Order." (Dkt. No. 4 at 3.)

On January 11, 2023, Plaintiff filed an amended motion for leave to proceed IFP. (Dkt. No. 5.) In addition, Plaintiff filed a Letter Request/Motion seeking a restraining order, and two letters to the Court. (Dkt. Nos. 6, 7, 8.)

**B. Complaint**

Construed as liberally [1] as possible, Plaintiff's Complaint appears to allege that his civil rights were violated by Defendant. (*See generally* Dkt. No 1.) The Complaint is far from clear but appears to allege that sometime in May 2023, Defendant, who is employed by the Federal Bureau of Investigations, "tampered with a witness that was on" Plaintiff's witness list. (Dkt. No. 1 at 5.) Based on these factual allegations, Plaintiff appears to assert the following two claims: (1) a claim that Plaintiff's "Sixth Amendment confrontation" right was violated; and (2) a claim that Plaintiff's Fifth Amendment due process right was violated. (*Id.* at 4.) As relief, Plaintiff seeks $1,000,000 in damages. (*Id.* at 5.)

Plaintiff seeks leave to proceed IFP. (Dkt. No. 5.)

**II. PLAINTIFF'S AMENDED APPLICATION TO PROCEED IFP**

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to grant IFP status if it determines that the plaintiff is unable to pay the required fee. 28 U.S.C. § 1915(a)(1). [2] Pursuant to 28 U.S.C. § 1915, where a plaintiff seeks leave to proceed IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the required filing fee. 28 U.S.C. § 1915(a)(1).

**\*2** The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983). The Court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915[a] does not require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir.

2000). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

Here, Plaintiff's submission is incomplete. For example, in response to question number 4, Plaintiff states that he has cash, checking, or savings accounts but does not know the total amount. (Dkt. No. 5 at ¶ 4.) Moreover, Plaintiff states that he owns real estate, stocks, bonds, securities, other financial instruments, automobiles, or other assets. (*Id.* at ¶ 5.) The application directs Plaintiff to describe the property and state its value. (*Id.*) Plaintiff states "Land and house have not [sic] clue on the value." (*Id.*)

In this instance, due to Plaintiff's incomplete IFP application, I am unable to conclude that he possesses insufficient funds to pay the $405.00 filing fee to commence an action without "foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. 339). Accordingly, I deny Plaintiff's amended motion to proceed in this case IFP. [3] (Dkt. No. 5.) To the extent that Plaintiff may wish to renew his request to proceed IFP, and given the Court's unanswered questions about his financial situation, any request to proceed without the prepayment of fees must include a <u>fully</u> completed prisoner *in forma pauperis* application. [4]

## III. RELEVANT LEGAL STANDARDS GOVERNING INITIAL REVIEW OF A COMPLAINT

**\*3** Ordinarily, the finding that Plaintiff does not qualify for IFP status would end the Court's discussion, and Plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that Plaintiff's Complaint fails to state a claim upon which relief may be granted, *28 U.S.C. § 1915* requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" *28 U.S.C. § 1915(e)*.

*Section 1915(e)* directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be

granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *28 U.S.C. § 1915(e)(2)(B)*. In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

When reviewing a complaint under *section 1915(e)*, the court is guided by applicable requirements of the Federal Rules of Civil Procedure. More specifically, *Rule 8 of the Federal Rules of Civil Procedure* provides that a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown– that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having

reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

"It is well-settled that a [42 U.S.C.] § 1983 claim does not lie against the federal government, its agencies, or employees." *Feldman v. Lyons*, 852 F. Supp. 2d 274, 278 (N.D.N.Y. 2012) (collecting cases). In 1971, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 397 (1971), "the Supreme Court recognized an implied private cause of action for damages against federal officers who violate a citizen's constitutional rights." *Feldman*, 852 F. Supp. 2d at 278. "*Bivens* actions, although not precisely parallel, are the federal analog to § 1983 actions against state actors." *Id*. (citing *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987)).

**\*4** In *Bivens*, the Court determined that, "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (citing *Bivens*, 403 U.S. at 397). The Court further noted, however, that since its decision in *Bivens* in 1971, it had only recognized an implied cause of action under *Bivens* in two cases involving other constitutional violations. *Id.* at 1854-55 (citing *Davis v. Passman*, 99 S. Ct. 2264 (1979) (holding that the Fifth Amendment Due Process Clause provided an administrative assistant who sued a Congressman for firing her because she was a woman, a damages remedy for gender discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (holding that the Eighth Amendment Cruel and Unusual Punishments Clause provided a prisoner's estate a damages remedy for failure to provide the deceased with adequate medical treatment)).

The Supreme Court recently reiterated that "a cause of action under *Bivens* is 'a disfavored judicial activity.' " *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (quoting *Ziglar*, 582 U.S. at 135 (2017)). Generally, when analyzing whether a cause of action existed under *Bivens*, courts have used "a two-step process." *McGowan v. United States*, 825 F.3d 118, 123 (2d Cir. 2016) (per curiam). "First, the court must determine whether the underlying claims extend *Bivens* into

a 'new context.'" *McGowan*, 825 F.3d at 123 (quoting *Turkmen v. Hasty*, 789 F.3d 218, 234 (2d Cir. 2015), *reversed in part on other grounds by Ziglar*, 582 U.S. at 138-56). "If the case is different in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court, then the context is new." *Ziglar*, 582 U.S. at 139.

Here, assuming *arguendo* that Plaintiff had an implied cause of action under *Bivens* for his witness tampering claim, he fails to state a claim upon which relief may be granted. Plaintiff alleges solely that Defendant "tampered" with a witness on his witness list. (Dkt. No. 1 at 5.) This conclusory allegation fails to assert any action taken by Defendant that constituted the alleged tampering. *See Terpening v. McGinty*, 21-CV-1215, 2022 WL 17418268, at \*13 n.16 (N.D.N.Y. Oct. 5, 2022) (Hummel, M.J.) (finding that the plaintiff's allegation that she has been unable to obtain transcripts from the relevant custody proceedings and inclusion of a "one page letter from a court clerk at the Town of Rochester Justice Center" indicating that there were no records for a specific case number, failed to "plead any facts that suggest that defendant has taken any actions to tamper with evidence, or hide or alter any records" and thus, failed to allege facts plausibly suggesting a ... claim for relief), *report-recommendation adopted by* 2022 WL 17415121 (N.D.N.Y. Dec. 5, 2022) (Suddaby, J.); *London v. Cnty. of Ulster*, 14-CV-1095, 2015 WL 1579147, at \*9 (N.D.N.Y. Apr. 9, 2015) (Treece, M.J.) ("While [the p]laintiff has scripted pages upon pages of accusations against these two [d]efendants, including claims of bias, coercion, and witness/evidence tampering, these accusations are a cavalcade of conclusions and not facts upon which this Court may find that a plausible claim has been pled here. Thus, we recommend dismissing these [d]efendants from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).").

As a result, I recommend that Plaintiff's Complaint be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii). [5]

## V. OPPORTUNITY TO AMEND

**\*5** Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.

1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

Although this Court has serious doubts, it is not clear whether a better pleading would permit Plaintiff to assert a cognizable cause of action against Defendant. Out of an abundance of caution and in deference to Plaintiff's *pro se* status, the undersigned recommends the Complaint be dismissed with leave to amend to cure the defects as stated above.

If Plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individual(s) named as Defendant(s) are involved in the allegedly unlawful activity. Moreover, any amended pleading should address the issues identified in note 4. Finally, Plaintiff is informed that any amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

## VI. PLAINTIFF'S MOTION FOR A RESTRAINING ORDER

In the present matter, the undersigned has recommended dismissal of the action. As such, I recommend that Plaintiff's motion for a restraining order against Defendant be denied. (Dkt. No. 6.)

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended IFP application (Dkt. No. 5) is **DENIED without prejudice and with leave to renew**; and it is further

**ORDERED** that should Plaintiff wish to proceed with this action, he must either (i) pay the $405.00 filing fee, or (ii) submit a completed, signed, and certified inmate IFP application in accordance with this Order and Report-Recommendation **within thirty (30) days** from the date of the filing of this Order and Report-Recommendation. Plaintiff is advised that, if he does not fully comply with this Order and Report-Recommendation within thirty days, the undersigned will issue a report and recommendation to the assigned district judge that the action be dismissed; and it is further respectfully

**\*6 RECOMMENDED** that the Court **DISMISS WITH LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim upon which relief may be granted; and it is further respectfully

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for a restraining order (Dkt. No. 6); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7] The Clerk shall also send Plaintiff a blank inmate IFP application.

Dated: January 17, 2023

Binghamton, New York

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

**All Citations**

Slip Copy, 2024 WL 196724

## Footnotes

1    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3    To the extent that Plaintiff has been granted IFP in other actions that does not automatically qualify him for IFP status in this action. (Dkt. No. 7.) Moreover, Plaintiff is required to provide complete information regarding his finances because he is seeking IFP status. To the extent that Plaintiff would prefer to not provide the financial information, he is permitted to pay the $405 filing fee and forgo the IFP application. In addition, Plaintiff's choice to seek IFP status does not grant him access to the same financial information from Defendant. (Dkt. No. 8.)

4    The Court also notes that Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It appears from that review that Plaintiff accumulated three strikes for purposes of 28 U.S.C. § 1915(g) before the date this action was commenced. *Lettieri v. Broome Cnty. Humane Society*, 20-CV-7777, 23-CV-7830, 2023 WL 8003478, at *1 (E.D.N.Y. Nov. 17, 2023) (noting that Plaintiff accumulated his third strike on September 21, 2023). Moreover, the Complaint does not plausibly suggest that Plaintiff was in imminent danger of serious physical injury when he signed the Complaint. 28 U.S.C. § 1915(g).

5    To the extent that Plaintiff's claim is construed as a conspiracy claim pursuant to 42 U.S.C. § 1985 or *Bivens*, I recommend that it be dismissed for failure to state a claim upon which relief may be granted. To state a claim of conspiracy under *Bivens*, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Powell v. United States*, 19-CV-11351, 2020 WL 5126392, at *9 (S.D.N.Y. Aug. 31, 2020) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). To state a claim of conspiracy under Section 1985(3), a plaintiff must allege facts suggesting the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws,

or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of his right or privilege as a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [Section 1985(3)] conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas*, 165 F.3d at 146 (internal quotation marks and citation omitted).

Vague and unsupported assertions of a claim of conspiracy, either under Section 1985 or *Bivens* will not suffice to state a claim upon which relief can be granted. *See, e.g.*, *Stoner v. Young Concert Artists, Inc.*, 626 F. App'x 293, 296 (2d Cir. 2015) (summary order); *Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990). Plaintiff's sole conclusory allegation that Defendant engaged in witness tampering fails to plausibly suggest any conspiracy with other actors.

6    *See also* *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

7    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3518327
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rikisha S. SMITH, Plaintiff,

v.

Joseph JACKSON, Defendant.

5:21-CV-0005 (MAD/ML)
|
Signed 01/11/2021

**Attorneys and Law Firms**

RIKISHA S. SMITH, Plaintiff, Pro Se, 223 Otisco Street, Syracuse, New York 13204

<u>**ORDER and REPORT-RECOMMENDATION**</u>

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* (Dkt. No. 2) filed by Rikisha S. Smith ("Plaintiff") to the Court for review. For the reasons discussed below, I deny as moot Plaintiff's *in forma pauperis* application (Dkt. No. 2) and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without leave to amend. Further, in light of Plaintiff's abuse of the judicial process in this District, I recommend the issuance of an anti-injunction order preventing her from filing any further actions in this District without prior permission from the Chief District Judge.

**I. BACKGROUND**

On October 24, 2018, Plaintiff commenced a *pro se* action in the Northern District of New York, No. 5:18-CV-1252 (LEK/ATB) ("*Smith I*") along with five minor children S.L.H., A.I.L., S.J.H., A.P.H., P.I.L., and the organization referred to as the Children's Rainbow No #'s, against defendants President George W. Bush, President Obama, Dr. Scott, Dr. Jackson, Donald Trump, and Supreme Courts. (*Smith I*, Dkt. No. 1.)

On November 1, 2018, U.S. Magistrate Judge Andrew T. Baxter granted Plaintiff's IFP application but recommended dismissal of the complaint pursuant to ⚑ 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). (*Smith I*, Dkt. No. 4.) Judge Baxter

found Plaintiff's complaint in *Smith I* to be frivolous and incomprehensible. (*Id.* at 4.)

On November 28, 2018, Plaintiff filed an amended complaint in *Smith I*. (*Smith I*, Dkt. No. 6.)

On December 3, 2018, Senior United States District Judge Lawrence E. Kahn adopted Judge Baxter's report and recommendation in its entirety. (*Smith I*, Dkt. No. 8.) Judge Kahn dismissed Plaintiff's complaint with prejudice against Plaintiff and the Children Rainbow #s and without prejudice against S.L.H., A.I.L., S.J.H., A.P.H., and P.I.L. (*Id.*) Judgment was entered on December 3, 2018. (*Smith I*, Dkt. No. 9.)

On December 4, 2018, Plaintiff filed a notice of appeal in *Smith I*. (*Smith I*, Dkt. No. 12.)

On December 4, 2018, Judge Kahn issued a text order stating, *inter alia*, "[t]he Amended Complaint and other recent filings are collections of documents, submitted without explanation, that do not assert any new claims for relief. As Smith's claims were dismissed with prejudice, and the children here are not represented by counsel, the Court will not consider the Amended Complaint, nor any further filings by Smith in this matter." (*Smith I*, Dkt. No. 14.)

On December 27, 2018, Plaintiff filed a motion to reopen the case. (*Smith I*, Dkt. No. 16.) On January 2, 2019, Judge Kahn issued a text order denying Plaintiff's motion because "[t]he Court previously advised Smith that her claims were dismissed with prejudice and that it would not consider any further submissions from her in this matter" and "the Motion to Reopen articulates no grounds on which reopening would be appropriate." (*Smith I*, Dkt. No. 17.)

On June 12, 2019, the Second Circuit dismissed Plaintiff's appeal "because it lacks an arguable basis either in law or in fact." (*Smith I*, Dkt. No. 20.)

**\*2** On July 6, 2020, Plaintiff commenced a *pro se* action in the Northern District of New York, No. 5:20-CV-0748 (TJM/ML) ("*Smith II*"), against defendants Rikita Smith, President Nixon, Torron J. Baxter, Nikki Piddilla, Marina Bewer, Strauther L. Hosea, Strauthmeek J. Hosea, Jason S. Lebron, Sadi, Laverne Scott, Dorthy Sullivan, and Tonya Crawford. (*Smith II*, Dkt. No. 1.)

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 33 of 67

On August 21, 2020, the undersigned issued an Order and Report-Recommendation that, *inter alia*, denied as moot Plaintiff's *in forma pauperis* application and recommended that Plaintiff's Complaint be dismissed in its entirety with leave to amend, finding that it was frivolous. (*Smith II,* Dkt. No. 10.)

On August 27, 2020, Plaintiff filed an Amended Complaint (*Smith II,* Dkt. No. 11) and objections to the Order and Report-Recommendation dated August 21, 2020 (*Smith II,* Dkt. No. 14.)

On September 2, 2020, Senior United States District Judge Thomas J. McAvoy issued an Order that, *inter alia,* (1) overruled Plaintiff's objection, (2) accepted and adopted the Order and Report-Recommendation of August 21, 2020, and (3) referred Plaintiff's Amended Complaint to the undersigned for review. (*Smith II,* Dkt. No. 17.)

On October 9, 2020, the undersigned issued an Order and Report-Recommendation that, *inter alia*, recommended dismissal of Plaintiff's amended complaint without leave to amend, finding that it was frivolous. (*Smith II,* Dkt. No. 26.) That Order and Report-Recommendation is currently pending before Judge McAvoy. (*See generally Smith II* docket sheet.)

On October 6, 2020, Plaintiff commenced a *pro se* action in the Northern District of New York, No. 5:20-CV-1225 (MAD/ML) ("*Smith III*"), against defendant President Bill Clinton. (*Smith III,* Dkt. No. 1.)

On October 13, 2020, the undersigned issued an Order and Report-Recommendation that, *inter alia*, denied as moot Plaintiff's *in forma pauperis* application and recommended that Plaintiff's Complaint be dismissed in its entirety with leave to amend, finding that it was frivolous. (*Smith III,* Dkt. No. 9.) That Order and Report-Recommendation is currently pending before United States District Judge Mae A. D'Agostino. (*See generally Smith III* docket sheet.)

On January 5, 2021, Plaintiff commenced this *pro se* action ("*Smith IV*") by the filing of her Complaint against Joseph Jackson, who is alleged to be the "Dad of Jacksons." [1] (Dkt. No. 1.)

**\*3** The Complaint consists of five different form complaints, which purport to assert actions arising under (1) 42 U.S.C. § 1983; (2) Title VII of the Civil Rights Act, as amended; (3) for employment discrimination based on age;

(4) the Americans with Disabilities Act; and (5) *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See generally* Dkt. No. 1.) The Complaint is a series of incomplete sentences that are largely indecipherable and devoid of factual assertions. (*Id.*)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff has paid the statutory filing fee (Dkt. No. 1, Attach. 1 at 1), the motion to proceed *in forma pauperis* is denied as moot. *Ping Lin v. Holder*, 387 F. App'x 93, 97 (2d Cir. 2010) ("The pending motion to proceed *in forma pauperis* is DENIED as moot because the filing fee has already been paid.").

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed, notwithstanding payment of the filing fee. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous). In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).

## IV. ANALYSIS

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 34 of 67

In addressing the sufficiency of a plaintiff's complaint, the court must construct her pleadings liberally. 🚩 *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Plaintiff's Complaint is comprised of twenty-one pages of incoherent text written on every form-complaint from the Clerk's office. (*See generally*, Dkt. No. 1.) By way of example, in the facts portion of Plaintiff's Complaint that was filed on the Civil Rights Complaint pursuant to 🚩 42 U.S.C. § 1983 form, Plaintiff alleges as follows:

> STory about Joseph Jackson 7-26
> 6-27
> and Katherine Jackson 5-4
> Baker St Syracuse N.Y. Gilbert Baker
> 6-2
> Elizabeth St Syracuse N.Y. Queen
> Elizabeth
> 4-21 Human cloning AS863 Andrew
> Jackson
> 20 bill AS863 Patriots act unsolved
> homiside
> cases Syracuse N.Y. (315) Purge
> Masters 11-23 11-26 11-28
> Purge Day 321 Talisha Unique Smith
> Uncle Charles Smith Father and
> daughter 421 Montgomery St
> **\*4** Hason Myrick 123 snap benefits
> walefare building
> House congress
> House of representatives

(Dkt. No. 1 at 2-3 [errors in original].) In addition, in the causes of action portion of Plaintiff's Complaint that was filed on the Civil Rights Complaint pursuant to 🚩 42 U.S.C. § 1983 form, Plaintiff alleges as follows:

> FIRST CAUSE OF ACTION
> Jason S Lebron date of birth 1-5 president
> Calvin Coolidge grandma name Mrs Rubby
> Calvin Mcalpine grandma name Mrs. Ruby
> Jason S Lebron aunt name Brinda Godwin
> Calvin Mcalpine grandma name Brinda Bush

> SECOND CAUSE OF ACTION
> Calneisha Mcalpine dad name is
> Calvin Mcalpine
> Calmesha Givings dad name is
> Calvin Givings Calmesha Giving and Joseph
> is married story about Joseph Jackson
> and Katherine Jackson

> THIRD CAUSE OF ACTION
> We all attended East Gate Church
> Hudson St Syracuse N.Y.
> Jason S Lebron grandma has a resturant
> named ruby's soul food Calvin Mcalpine
> grandma Mrs ruby has a resterant named
> Ruby's soul food South ave that
> was closed down

(Dkt. No. 1 at 3 [errors in original].) In the facts portion of Plaintiff's Complaint that was filed on the Civil Complaint pursuant to Title VII of the Civil Rights Act, as amended form, Plaintiff alleges as follows:

> Game chess
> St Chester
> Chestor the melestor "Jessy" old man
> White Calvin "Lepercones"
> Patrick "Lepercones"
> Franky "Lepercones"
> 20\$ 3-15 President Andrew Jackson B-day deaf date 6-8
> Syracuse N.Y. area code (315) Human cloning AS863
> 2-7S 7-12S Calendar Telepathies
> And Human Trafficing children with lead poinson

(Dkt. No. 1 at 7 [errors in original].)

As the Complaint is currently drafted, the Court is unable to meaningfully analyze, whether, and to what extent, Plaintiff has pleaded any colorable claim against Defendant. (*See generally* Dkt. No. 1.) Plaintiff's Complaint places an unjustified burden on the Court and, ultimately, on Defendant " 'to select the relevant material from a mass of verbiage.' "

🚩 *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)).

As a result, I recommend the complaint be dismissed as frivolous. *See, e.g., Gillich v. Shields*, 18-CV-0486, 2018 WL 2926299 (N.D.N.Y. Apr. 30, 2018) (Peebles, M.J.), *report and recommendation adopted by* 2018 WL 2926302,

at \*3 (N.D.N.Y. Jun. 8, 2018) (D'Agostino, J.); *Canning v. Hofmann*, 15-CV-0493, 2015 WL 6690170, at \*5 (N.D.N.Y. Nov. 2, 2015) (Hurd, J.) ("Under these circumstances, having found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal."); *see also* 🚩 *Salahuddin*, 861 F.2d at 42 ("Dismissal [for failure to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure] ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." 🚩 *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." 🚩 *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also* 🚩 *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." 🚩 *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [2]

 \***5** In this case, because the Court already afforded Plaintiff an opportunity to amend her Complaint in *Smith I* and *Smith II*, and recommended that she be provided an opportunity to amend her Complaint in *Smith III*, and as set forth *infra*, each of Plaintiff's complaints and attempts at amendments have been deemed frivolous, I find that the Court need not grant Plaintiff an opportunity to amend. *See* 🚩 *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir.

2003) (quoting 🚩 *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998)) (finding that the "District Court did not abuse its discretion in denying [the plaintiff] leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments previously allowed.' "); *Hall v. Clinton Cnty.*, 18-CV-1405, 2020 WL 1923236, at \*7 (N.D.N.Y. Apr. 21, 2020) (Suddaby, C.J.) (dismissing without leave to amend the *pro se* plaintiff's amended complaint where the court "already afforded Plaintiff an opportunity to amend his Complaint"); *Carrasco v. Annucci*, 17-CV-0246, 2017 WL 6492010, at \*2 (N.D.N.Y. Dec. 15, 2017) (Suddaby, C.J.) (dismissing a complaint pursuant to 🚩 28 U.S.C. § 1915(e) (2)(B) without leave to amend "because plaintiff has already had two opportunities to amend the complaint"); 🚩 *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

Moreover, the Court notes that after a careful review of the Complaint, there is no possible amendment to that Plaintiff could propose that would state a claim against Defendant. Plaintiff's allegations are "exactly the type of claims that the courts refer to as 'fanciful' or 'frivolous,' and clearly not 'plausible' on their face. Such claims cannot be cured by amendment and must be dismissed without leave to replead." *Smith v. Bush*, 18-CV-1252, 2018 WL 10550928, at \*4 (N.D.N.Y. Nov. 1, 2018) (Baxter, M.J.) (citing 🚩 *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as factually frivolous if the sufficiently well-pleaded facts are clearly baseless—that is, they are fanciful, fantastic, or delusional")), *report and recommendation adopted by*, 2018 WL 10550926 (N.D.N.Y. Dec. 3, 2018) (Kahn, J.).

As a result, I recommend that Plaintiff's Complaint be dismissed without leave to amend.

## VI. RECOMMENDATION OF BAR ORDER

Courts have always recognized that they may resort to restrictive measures when responding to vexatious litigants. *In re Martin-Trigona*, 9 F.3d 226, 228-29 (2d Cir. 1993) (noting that the Supreme Court and other Circuits have imposed restrictive measures). The Court has the obligation to protect the public and the efficient administration of justice from individuals who have a history of vexatious and harassing litigation because it imposes needless expense on the parties and an unnecessary burden on the court. *Lau v.*

*Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). In this context, courts have accepted the need for permanent injunctions as a result of extraordinary patterns of vexatious, harassing, and baffling litigation practices. *In re Aarismaa*, 233 B.R. 233, 247 (N.D.N.Y. 1999) (McAvoy, C.J.); *Toro v. Depository Trust Co.*, 97-CV-5383, 1997 WL 752729, at *4 (S.D.N.Y. Dec. 4, 1997) (identifying the All Writs Act as a legal basis to impose sanctions and enjoin a plaintiff who abuses the judicial process).

Under the All Writs Act, 28 U.S.C. § 1651, a court may sanction a vexatious litigant who abuses the judicial process by enjoining him from pursuing future litigation without leave of the court. *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004); *Malley v. New York City Bd. of Educ.*, 112 F.3d 69, 69-70 (2d Cir. 1997). An enjoinder may be permanent or may impose the less drastic remedy of a "leave to file" requirement. *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) (noting the court's ability to levy a leave to file requirement); *Raffe v. John Doe*, 619 F. Supp. 891 (S.D.N.Y. 1985) (granting a permanent injunction restraining the plaintiff from filing any further actions); *In re Aarismaa*, 233 B.R. at 247 (observing that such "restrictive measure[s] have included foreclosing the filings of pleadings in a particular case or requiring that leave of court first be sought").

**\*6** Before regulating a truculent and persistent litigant by restricting future access to the court, a court should consider

> (1) the litigant's history of the litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, and in particular whether the litigant has a good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Toro*, 1997 WL 752729, at *4 (citing *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

It is clear that Plaintiff fits the mold of a pestilent litigator who can only be estopped from pursuing frivolous litigation by sanctions more austere than dismissing her actions. First, a review of Plaintiff's litigation history shows that all of her filed claims are frivolous. Second, Plaintiff could not have had a good faith expectation of prevailing in her civil actions as they not only patently lack any legal basis, but she has already been told by multiple federal judges of this fact. Third, although Plaintiff is a *pro se* litigant, she has filed four lawsuits in the Northern District of New York and she has appealed to the Second Circuit Court of Appeals. In each instance, Plaintiff has been informed of the shortcomings of her pleadings/appeals, and has received explicit direction as to how to remedy and replead, all of which has fallen on deaf ears. Fourth, Plaintiff has caused needless harassment and burden on the Court in having to understand the basis for her filings, only to discover that she has already presented the very same (or substantially similar) claims to other judges, but because she did not like the result, she insists on refiling, presumably until she obtains the desired result of monetary compensation. Plaintiff has unquestionably taxed the resources of this Court because "[e]very paper [she has] filed with the Clerk of this Court, no matter how repetitious or frivolous, require[d] some portion of the institution's limited resources." *In re McDonald*, 489 U.S. 180, 184 (1989). Fifth, in light of Plaintiff's litigation history, it does not appear that any other sanction, short of an injunction, will be adequate to protect the Court from Plaintiff's insatiable appetite for continued litigation. *See Ulysses I & Co., Inc. v. Feldstein*, 01-CV-3102, 2002 WL 1813851 (S.D.N.Y. Aug. 8, 2002), *aff'd sub nom.* *Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27 (2d Cir. 2003).

Thus, I recommend in addition to dismissal of the within case that, pursuant to 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings, Plaintiff be prohibited from making any future filings in this District without prior leave of the Chief Judge. *See Yefimova v. Trustco Bank*, 17-CV-0730, 2017 WL 4216987, at *3-4 (N.D.N.Y. July 31, 2017) (Stewart, M.J.) (recommending a bar order where the plaintiff was deemed a persistent, frivolous litigator),

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 37 of 67

*report and recommendation adopted by,* 2017 WL 4157337 (N.D.N.Y. Sept. 18, 2017) (Suddaby, C.J.).

**\*7  ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **DENIED** as moot; and it is further

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) pursuant to 28 U.S.C. § 1915(e)(2)(B)(i); and it is further respectfully

**RECOMMENDED** that Plaintiff be permanently enjoined from filing any other cases in this District without leave of the Chief District Judge. As noted below, Plaintiff will be provided a brief period of time for her to lodge any objections she has to this Court's recommendations. Plaintiff may choose to use that opportunity to also address the recommendation barring her from filing cases in this District without prior permission; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3518327

## Footnotes

1    The Court notes that Plaintiff's Complaint also purports to list several other individuals as defendants. More specifically, in various sections, the Complaint lists as defendants "Clause Act," "12-24," "Christmas Eve," "Patriot's act," and "AS863 Bill" (Dkt. No. 1 at 1), "Shawn Corey Carter" and "Beyonce Giselle Knowles" (*id.* at 2), "12-25," "The Holey Bible King James," "James M. Hanley," and "Andrew Jackson," (*id.* at 5), "Katherine Jackson" (*id.* at 6), "Christopher George Latore Wallace" (*id.* at 10), "Erika Badoo" and "Willow Smith" (*id.* at 11), "Wassam Al Mana" and "Saints Purge Masters Purge Jewels Calendar" (*id.* at 14), "James Madison (Africa)" (*id.* at 18), and "James Monroe (Africa)" and "James K. Polk (Africa)" (*id.* at 19). In addition, the Complaint appears to list several other individuals as plaintiffs. More specifically, in various sections, the Complaint lists as plaintiffs "A.P.H.," "S.J.H.," "S.L.H.," A.I.L.," and "R.S.S." (*Id.* at 1, 5, 10, 14, 18.) However, the Complaint is incomprehensible and contains a myriad of clearly frivolous statements, which do not appear to have any connection to any of the alleged plaintiffs or defendants. As a result, it is unclear whether Plaintiff intended to assert causes of actions against these purported defendants or on behalf of these purported plaintiffs or whether the notations are merely additional nonsensical allegations.

2    *See also* *Carris v. First Student, Inc.,* 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 38 of 67

accurate recitation of the governing law after 🚩 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

3    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Overruling Risk - Negative Treatment

Overruling Risk    Exxon Mobil Corp. v. Saudi Basic Industries Corp.,    U.S.,
March 30, 2005

2002 WL 1813851

United States District Court, S.D. New York.

ULYSSES I & COMPANY, INC., Plaintiff,

v.

Gary FELDSTEIN, Defendant.

Sheldon SOLOW, Marc Dreier and Stuart Schlesinger,

Additional defendants on the Counterclaims.

No. 01 CV 3102 LAP.

|

Aug. 8, 2002.

**Synopsis**

Action was brought for violations of Racketeer Influenced & Corrupt Organizations Act (RICO), and for common law fraud and unjust enrichment. Defendant moved to dismiss, and other pretrial motions were filed. The District Court, Preska, J., held that: (1) federal claims seeking damages for losing the premises to defendant were barred by *Rooker–Feldman* doctrine because they were "inextricably intertwined" with state court judgment in which plaintiff sought possession of the premises; (2) plaintiff's claims were barred by res judicata; and (3) defendant was entitled to enjoin plaintiff and its officers, directors, agents and employees from pursuing any further claims against defendant.

Judgment for defendants.

West Headnotes (5)

**[1]    Courts**  ☞  **Particular Cases and Contexts**

Federal claims seeking damages for losing premises to defendant were barred by *Rooker–Feldman* doctrine because they were "inextricably intertwined" with state court judgment in which plaintiff sought possession of the premises; federal claims directly implicated the propriety of state court judgment.

6 Cases that cite this headnote

**[2]    Res Judicata**  ☞  **Real property in general**

**Res Judicata**  ☞  **Torts and Personal Injuries in General**

**Res Judicata**  ☞  **Fraud and racketeering**

Claims for violations of Racketeer Influenced & Corrupt Organizations Act (RICO), and for common law fraud and unjust enrichment arising from defendant's alleged unlawful scheme, were barred by res judicata; those claims could have been raised in prior action between the parties in which plaintiff alleged slander of title with respect to the premises at issue, conspiracy to interfere tortiously with plaintiff's contractual relations with seller of premises, and conspiracy to interfere tortiously with plaintiff's quiet possession and enjoyment of its real property.

⚑ 18 U.S.C.A. § 1961 et seq.

1 Case that cites this headnote

**[3]    Injunction**  ☞  **Particular cases**

Defendant was entitled to enjoin plaintiff and its officers, directors, agents and employees from pursuing any further claims against defendant; plaintiff had a history of duplicative litigation with respect to ownership of the premises at issue, and could not have had an objective good faith expectation of prevailing in the case.

10 Cases that cite this headnote

**[4]    Federal Courts**  ☞  **Matters of Procedure in General**

Federal question jurisdiction could not be premised on statute governing counsel's liability for excessive costs because that section did not authorize an independent cause of action. 28 U.S.C.A. § 1927.

**[5]    Lis Pendens**  ☞  **Cancellation, discharge, or modification**

Notices of pendency filed by plaintiffs would be cancelled pursuant to New York law where all three actions underlying the notices of pendency

had been settled, discontinued or abated. N.Y. McKinney's CPLR § 6514(a).

5 Cases that cite this headnote

*MEMORANDUM AND ORDER*

PRESKA, J.

**\*1** Plaintiff Ulysses I & Company, Inc. ("Ulysses") brings this second amended complaint ("Second Amended Complaint") against defendant Gary Feldstein ("Feldstein") for violations of federal law under the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* and for common law fraud and unjust enrichment arising from Feldstein's alleged unlawful scheme to: (1) misappropriate millions of dollars from Total Physicians Services, Inc. ("TPS"), (2) use the stolen funds to acquire and maintain control over certain oceanfront property in East Hampton, New York, which rightfully belongs to Ulysses, and (3) falsify public documents, obstruct the administration of justice and improperly enlist the police to perpetuate his fraudulent scheme and control of the premises. Peter Morton ("Morton"), formerly a defendant in this action, brings counterclaims against Ulysses, former plaintiff Bridgewater Operating Corporation ("Bridgewater") and additional defendants Sheldon Solow ("Solow"), Marc Dreier ("Dreier") and Stuart Schlesinger ("Schlesinger"), alleging tortious conduct, intentional infliction of injury, abuse of process, engagement in serial litigation, violation of New York Judiciary Law § 487(a) and violation of 28 U.S.C. § 1927. [1]

Feldstein now moves for an order: (1) dismissing Ulysses' Second Amended Complaint pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, and (2) enjoining Ulysses from pursuing any further claims against Feldstein with respect to the Premises at issue in this action. Morton also moves, by order to show cause, to dismiss the complaint and to vacate three notices of pendency filed with the Clerk of Suffolk County, to enjoin Ulysses from initiating any further litigation over the Premises or against the defendants without permission from the Court and for

attachment against the assets of Ulysses and any interest of Ulysses in personal property or any debt owed it in New York up to $1,464,242.39. Dreier moves to dismiss the counterclaims asserted against him pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the foregoing reasons, Feldstein's motion to dismiss the Second Amended Complaint is granted, Morton's state counterclaims are dismissed without prejudice, and Morton's federal counterclaim is dismissed with prejudice.

BACKGROUND

*Rounick–Feldstein Contract*

This litigation has a long and sordid history. In or about October 1992, Jack Rounick ("Rounick"), the owner of certain property located at 57 West End Road, in the town of East Hampton, County of Suffolk and State of New York (the "Premises"), entered into a lease agreement (the "1992 Lease") with Feldstein by which Feldstein, as tenant, took possession of the Premises, including Rounick's personal furnishings. (Second Amended Complaint ¶ 5). In May 1993, Rounick and Feldstein entered into a sales contract ("Sales Contract") superceding the 1992 Lease, whereby Feldstein agreed to purchase the Premises (exclusive of Rounick's furnishings) for $7 million: $1.7 million (including the amount already paid under the 1992 Lease) in installments before the scheduled closing, $1.3 million upon closing and $4 million in installments on specified dates after the closing. (*Id.* ¶ 6 & Ex. A). The Sales Contract provided that the closing date would be on or before October 1, 1997. (*Id.* ¶ 7). The Sales Contract further provided that Feldstein could continue to occupy the Premises until the closing date, provided that he met his periodic payments and other obligations under the Sales Contract. (*Id.* ¶ 8). If the scheduled closing date passed and Feldstein failed to close, according to the Sales Contract, Feldstein would have to vacate the Premises. (*Id.*).

**\*2** On May 30, 1997, Rounick and Feldstein executed a second amendment to the Sales Contract ("Second Amendment"), extending the closing date until October 1, 1998. (*Id.* ¶ 7 & Ex. B). The Second Amendment also provided that Feldstein could accelerate this closing date if he made an advance payment, upon such election, in the amount of $1.1 million. (*Id.*).

In or about June 1998, Ulysses alleges, Feldstein informed Rounick that he was "having financial difficulties" and likely would be unable to purchase the Premises as scheduled. (*Id.*

¶ 9). As a result, Rounick sought another purchaser for the Premises. (*Id.*). According to Ulysses, however, Feldstein "undertook to acquire the Premises with stolen monies, enlisting the aid of various third parties towards that end." (*Id.* ¶ 10). Feldstein, Ulysses alleges, "devised a plan by which, to the very substantial detriment of TPS's creditors, he would illegally divert funds from TPS to purchase the Premises," which resulted in TPS filing for bankruptcy in August 1998. (*Id.* ¶ 12). As the Chairman and Chief Executive Officer of TPS—which purported to be a specialist in the treatment of HIV/AIDS patients and funded primarily through Medicare and Medicaid participation—Feldstein acquired a number of other medical practices, beginning in August 1996. (*Id.* ¶¶ 11, 13, 18, 20, 22, 24). Due to "these fraudulent acquisitions of medical practices, Feldstein illegally converted to his personal use cash or assets of not less than $5 million." (*Id.* ¶ 26). Ulysses alleges that Feldstein also engaged in a number of additional schemes that "robbed" TPS of "millions of dollars and rendered [it] insolvent." (*Id.* ¶ 35).

On August 10, 1998, Feldstein entered into an Agreement to Assign and Assume ("Agreement to Assign") with Morton, whom Ulysses describes as "a Las Vegas casino owner with a history of violations of the federal election laws, and related money laundering." (*Id.* ¶ 36). Pursuant to that agreement, Feldstein agreed to assign to Morton all of Feldstein's rights and obligations under his Sales Contract with Rounick. (*Id.* ¶ 37). The Agreement to Assign provided that Morton would pay Feldstein $9.7 million, of which $970,000 was deposited in escrow with Stroock & Stroock & Lavan LLP ("Stroock"). (*Id.* ¶ 37 & Ex. L). Ulysses alleges that, several days after executing the Agreement to Assign, Feldstein requested Rounick's consent to the assignment, but Rounick refused. (*Id.* ¶ 38). Rounick also allegedly refused Feldstein's offer on a "discounted" purchase price. (*Id.*).

On August 20, 1998, Stroock wrote to Rounick informing him that Stroock's client, Feldstein, had entered into an assignment to assign his contractual right to purchase the Premises. (*Id.* ¶ 39 & Ex. M). In this letter, Feldstein offered two alternatives to Rounick: (1) amend the existing contract between Rounick and Feldstein "to cause a mutually agreeable amount representing the present discounted value of all future payments to be made to [Rounick] under [the existing contract] to be paid to [Feldstein] at the closing of title to the property"; or (2) Feldstein and Morton would "accelerate the closing of title" to the Premises to August 28, 1998, with Morton assuming all of Feldstein's payment obligations under the existing contract. (*Id.*).

**\*3** Rounick construed Feldstein's letter as a renunciation of the Sales Contract and a forfeiture of any remaining rights Feldstein may have had thereunder. (*Id.* ¶ 43). Therefore, on August 25, 1998, Rounick executed a contract for sale for the Premises to Ulysses ("Ulysses Sales Contract") in the amount of $4,925,000, which is approximately the same amount that would have otherwise been due from Feldstein to Rounick under the original Sales Contract. (*Id.* ¶ 44 & Ex. N). [2] On August 28, 1998, the title company submitted the deed for recording in the Office of the County Clerk. (*Id.* ¶ 68 & Ex. V).

On the same day that Rounick executed the contract for sale to Ulysses, Rounick wrote to Feldstein indicating that he had done so. (*Id.* ¶ 45 & Ex. 0). According to Ulysses, however, Feldstein ignored this notice and did not make the monthly payment of $33,500 due under the Sales Contract on September 1, 1998, nor did he pay real estate taxes due the day before. (*Id.* ¶ 46). Rather, by letter dated September 3, 1998, Stroock informed Rounick and Ulysses that Feldstein intended to accelerate the closing date of the sale of the Premises to September 10, 1998 and that Stroock expected both Rounick and Ulysses to be present "and to be prepared to fulfill [their] obligations pursuant to the Contract." (*Id.* ¶ 47, Ex. P). On September 10, 1998, Feldstein "held a sham 'closing' of the Sales Contract at the offices of his counsel, without Rounick in attendance." (*Id.* ¶ 48).

Thereafter, Ulysses alleges,

> Feldstein had been occupying the Premises pursuant to an interim arrangement under the Sales Contract. He was obligated to vacate the Premises if he failed to close on the purchase as of the scheduled closing date. However, after failing to close, Feldstein refused to surrender the Premises to either Rounick or Ulysses.
>
> Instead, Feldstein transferred possession of the Premises to Morton, again without the consent of either Rounick or Ulysses. Morton paid Feldstein certain "rent" money for the property on which Ulysses, not Feldstein, held title, and Feldstein absconded with this money to California, where he took up residence in the house he acquired with the funds he had stolen from TPS.

(*Id.* ¶¶ 54–55). Ulysses alleges that, "[i]n furtherance of the unlawful scheme," Morton took possession of the Premises in May 1999 and thereafter resided there along with his sister, Mara Gibbs ("Gibbs"), and his lawyer, Errol Margolin

("Margolin"). (*Id.* ¶ 56–57). Ulysses further alleges that it was forbidden from entering the Premises on numerous occasions, with the unlawful enlistment of several members of the East Hampton Police Department. (*Id.* ¶¶ 58–66).

### Suffolk County Action

On August 31, 1998, Feldstein commenced an action against Ulysses in Supreme Court, Suffolk County, to enforce the Sales Contract ("Suffolk County Action"). (*Id.* ¶ 69). Feldstein also filed a Notice of Pendency dated the same day. (*Id.* ¶ 69, Ex. X). Ulysses alleges, however, that the stamp-date on the Notice of Pendency was altered, and that Romaine, as Suffolk County Clerk, was "enlisted by Feldstein to knowingly use his office to unlawfully assist Feldstein in his illegal scheme." (*Id.* ¶ 67, 69–71). Further, Ulysses alleges, on or about September 9, 1998, Romaine rejected the August 28 submission from Ulysses' title company, which he did not re-execute, re-submit and record until September 21, 1998. (*Id.* ¶ 68). Ulysses alleges that:

> **\*4**  [a]s a result of the foregoing manipulation of recording and filing dates, Feldstein, with Romaine's assistance, created the false impression that his Notice of Pendency preceded the transfer of title in the Premises to Ulysses. In fact, however, Ulysses obtained good title on August 25, 1998 and duly submitted the deed for recording on August 28, 1998.

(*Id.* ¶ 72).

On January 31, 2000, the Honorable Gerard D'Emilio, Justice of the Supreme Court of the State of New York, County of Suffolk, granted Feldstein's motion for specific performance on his Sales Contract (the "January 31 Decision and Judgment"). (*Id.* ¶ 74 & Ex. Z). Ulysses alleges that, "[a]fter the January 31 Decision and Judgment was issued by Justice D'Emilio, Feldstein's counsel, Kevin Smith ('Smith'), spoke on the phone *ex parte* with Justice D'Emilio's law clerk, Gary Brunjes, and with Romaine," and that those individuals "agreed among themselves, all without Ulysses' knowledge, that, despite the direction of the Court, Romaine would not file the January 31 Decision and Judgment but rather that a new judgment prepared by Smith would be substituted." (*Id.*

¶ 77). Ulysses alleges that, "in clear violation of due process (as embodied in ⚑ CPLR 5016(c))," Romaine entered a new judgment prepared by Feldstein's attorney dated February 7, 2000 (the "Suffolk County Judgment"). (*Id.* ¶ 78 & Ex. 2). On October 10, 2000, that judgment was affirmed on appeal: the Appellate Division found that Feldstein "was ready, willing, and able to perform his obligations under the contract, even though his tender of performance was excused by the defendant seller's anticipatory breach." *Feldstein v. Rounick,* 276 A.D.2d 523, 714 N.Y.S.2d 689, 690 (App.Div.2d Dept.2000).

In April 2001, Ulysses moved in state court pursuant to CPLR 5015(a)(2) and (3) to vacate the Suffolk County Judgment on the ground that it was entered in violation of both due process and the mandatory notice procedures set forth in ⚑ CPLR 5016(c). (Second Amended Complaint ¶ 85). On May 14, 2001, the Honorable John J.J. Jones Jr., Justice of the Supreme Court of the State of New York, County of Suffolk, granted Ulysses' motion, vacated the Suffolk County Judgment pursuant to CPLR 5015(a)(3) and directed Feldstein to submit a new judgment (although the court still concluded that Feldstein was entitled to specific performance of the contract). (*Id.* ¶ 85, 714 N.Y.S.2d 689, Ex. 6). Feldstein moved for leave to renew and/or reargue the May 14 order. On October 2, 2001, Justice Jones granted Feldstein's motion and reinstated the Suffolk County Judgment. (*Id* . ¶ 86, 714 N.Y.S.2d 689, Ex. 22). On June 10, 2002, the Appellate Division affirmed the state court's October 2 holding, finding that Ulysses had "failed to establish that the judgment was procured by fraud, misrepresentation, or other misconduct" and had "failed to show that the alleged newly-discovered evidence could not have been discovered with due diligence before entry of the judgment." *Feldstein v. Rounick,* 743 N.Y.S.2d 735, 736 (App.Div.2d Dept.2002).

### Town of East Hampton Action

 **\*5**  On or about April 30, 1999, Ulysses filed against Feldstein and numerous other unnamed defendants a Notice of Petition to Recover Possession of Real Property in the East Hampton Justice Court, Town of East Hampton, County of Suffolk, State of New York. (Order to Show Cause, Exhibits to Motion to Dismiss ("OTSC Exhibits"), Ex. 30 (the "Petition")). The Petition sought final judgment of eviction and the awarding of the Premises to Ulysses. (*Id.*). After Feldstein served opposition papers, Ulysses apparently withdrew the Petition. (Order to Show Cause ¶ 34).

*Eastern District Actions*

On June 4, 1999, Ulysses commenced a diversity action by order to show cause against Morton in the United States District Court for the Eastern District of New York, alleging, *inter alia,* slander of title with respect to the Premises, conspiracy to interfere tortiously with Ulysses' contractual relations with Rounick and conspiracy to interfere tortiously with Ulysses' quiet possession and enjoyment of its real property. (OTSC Exhibits, Ex. 31). On November 5, 1999, the Honorable Michael L. Orenstein, United States Magistrate Judge, issued a Report and Recommendation to dismiss the action without prejudice pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join a necessary party: Feldstein. (*Id.* at 14). On January 6, 2000, the Honorable Dennis J. Hurley adopted Judge Orenstein's Report and Recommendation. (OTSC Exhibits, Ex. 32).

On or about April 6, 2000, Ulysses filed an amended complaint against Morton, Feldstein, Romaine and various entities in the District Court for the Eastern District of New York (the "Eastern District Action"). (Notice of Motion to Dismiss SAC, Ex. 5). The complaint alleged, *inter alia,* violations of 42 U.S.C. § 1983, intentional interference with the quiet possession and enjoyment of real property, intentional interference with contractual relations and conversion. The complaint focused on the defendants' alleged "unlawful conspiracy" to take from Ulysses the Premises to which Ulysses allegedly acquired title in August 1998 from Rounick. The complaint alleged that, since that date, while Ulysses has paid all property taxes and utility charges on the Premises, the defendants have excluded Ulysses from the Premises and falsely held themselves out as its owners and/or occupants. (*Id.* ¶ 13). The complaint further alleged that Justice D'Emilio entered judgment awarding the Premises to Feldstein in violation of the CPLR and the Due Process clause to the United States Constitution. (*Id.* ¶ 14).

On August 1, 2000, Judge Hurley orally dismissed the Eastern District Action. (OTSC Exhibits, Ex. 12). Judge Hurley stated that "the gravamen of plaintiff's complaint ... is quite clearly that Justice D'Emilio was wrong," (*id.* at 31), and concluded that the Court lacked subject matter jurisdiction under the *Rooker–Feldman* doctrine because "there is an available mechanism obviously to review the work product of Justice D'Emilio, and that's via an appeal to the Second Department," (*id.* at 32). [3] Judge Hurley also held that "[t]he doctrine of collateral estoppel is clearly applicable here." (*Id.* at 39). The judgment was entered on September 11, 2000. On

April 18, 2001, the Court of Appeals affirmed the judgment, and on October 29, 2001, the Supreme Court denied certiorari.

⊕ *Ulysses I & Co. v. Morton,* 11 Fed. Appx. 14 (2d Cir.), *cert. denied,* 534 U.S. 992, 122 S.Ct. 458, 151 L.Ed.2d 376 (2001).

*Southern District of Florida Bankruptcy Action*

**\*6** On August 18, 1998, TPS and TPS of Florida, Inc. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, which were later converted to Chapter 7 liquidation proceedings. (Notice of Motion to Dismiss SAC, Ex. 9, at 2). The Trustee commenced several adversary proceedings on behalf of the estate, including one against Feldstein for fraudulent transfers. (*Id.* at 3). On April 11, 2001, the Trustee filed a motion to approve a settlement agreement between itself and Feldstein. (*Id.* at 7). On April 30, 2001, a visiting judge, Thomas A. Ulschig, held a hearing on the motion. (*Id.*). Bridgewater—which is an affiliate of Ulysses by reason of common ownership and control and had purchased the claims of Sprout Capital VII, L.P. in this bankruptcy—objected to approval of the settlement agreement. (*Id.* at 7–8). Judge Ulschig also heard arguments "regarding Ulysses' pattern of litigiousness and how Bridgewater's request is really a dispute over the Hampton's [sic] property." (*Id.* at 8). Judge Ulschig then ruled from the bench that the settlement should be approved. (*Id.* at 9). Bridgewater appealed that decision to the United States District Court for the Southern District of Florida, which held, in November 2001, that Bridgewater's appeal should be dismissed as moot because "[b]oth the TPS and Feldstein have acted in reliance on the settlement agreement, and Bridgewater has done nothing to prevent its consummation," so "effective judicial relief no longer can be granted." (*Id.* at 17). In so ruling, the court observed:

> From the history of the suits, it appears that this appeal and Bridgewater's motions underlying the orders from which Bridgewater appeals are yet another attempt by Ulysses to gain possession of the Hamptons property. As Bridgewater's counsel acknowledged to the bankruptcy court, "We have a claim against Dr. Feldstein and we don't like the guy, and we think that the sale in New York should not go forward. We concede that."

(*Id.* at 5 (citation omitted)). On June 24, 2002, the Court of Appeals for the Eleventh Circuit affirmed the district court's dismissal of Bridgewater's appeal. (Letter from Errol F. Margolin to the Court, dated July 9, 2002, Ex. 1).

*The Instant Action (Southern District of New York)*

On or about April 12, 2001, plaintiffs Bridgewater and Ulysses filed a complaint in the Southern District of New York (the "Original Complaint") against defendants Feldstein, Stroock, Smith, Joan Taverni, Decten Fund, L.P., Andrea Benko, Morton, Gibbs, Margolin, Romaine, Patrick Aube, Richard Schneider, Kenneth Brown and Gerard Larsen (collectively the "Original Defendants"). The Original Complaint alleges violations of federal RICO law, civil rights violations under 🚩 42 U.S.C. § 1983 and violations of the common law "arising from defendants' unlawful conspiracy to misappropriate and share for their own wrongful benefit millions of dollars diverted from [TPS], ostensibly a healthcare provider for HIV/AIDS patients supported by Medicaid/Medicare funding but in fact a sham company ultimately driven into bankruptcy by this massive fraud to the detriment of TPS's creditors." (Original Complaint at 2).

**\*7**  On or about October 10, 2001, plaintiffs Bridgewater and Ulysses filed an amended complaint (the "Amended Complaint") against most of the Original Defendants but did not include Stroock, Smith or Margolin. [4] As in the Original Complaint filed on April 12, the Amended Complaint asserted claims for violations of federal law under RICO, civil rights violations under 🚩 42 U.S.C. § 1983 and for violations of the common law "arising from defendants' unlawful conspiracy to misappropriate and share for their own wrongful benefit millions of dollars diverted from [TPS], ostensibly a healthcare provider for HIV/AIDS patients supported by Medicaid/Medicare funding but in fact a sham company ultimately driven into bankruptcy by this massive fraud to the detriment of TPS's creditors." (Amended Complaint at 1–2).

On or about November 5, 2001, in response to the Amended Complaint, Morton brought counterclaims against Ulysses, Bridgewater, Solow, Dreier and Schlesinger ("Morton's Counterclaims") alleging tortious interference, intentional infliction of injury, abuse of process, engagement in serial litigation, violation of New York Judiciary Law § 487(a) and violation of 28 U.S.C. § 1927.

On or about November 9, 2001, defendants Morton, Gibbs, Aube and Margolin (collectively the "Morton Defendants") moved by order to show cause: (1) to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure; (2) to vacate the three notices of pendency

filed with the Clerk of Suffolk County by either Bridgewater or Ulysses based upon (i) the Amended Complaint, (ii) an unfiled action in the Southern District of New York ostensibly brought on behalf of the United States, and (iii) the Eastern District Action, (OTSC Exhibits, Exs. 18–20); [5] (3) to enjoin Ulysses from initiating any further litigation over the Premises or against the defendants without permission from the Court; and (4) for attachment pursuant to FRCP 64 and CPLR Article 62 against Ulysses on Morton's counterclaims against it and the other counterclaim defendants (Bridgewater, Solow, Schlesinger and Dreier). The Morton Defendants argued, *inter alia,* that this Court lacks jurisdiction under the *Rooker–Feldman* doctrine applicable to the Suffolk County Judgment, Ulysses' claims are barred by *res judicata* and collateral estoppel and Ulysses has not alleged a RICO claim.

On the same day that the Morton Defendants moved by Order to Show Cause, the case was reassigned from the Honorable Richard Owen to the Honorable Lewis A. Kaplan. Also that day, an order to show case was issued upon the Morton Defendants' application, which, *inter alia,* (1) temporarily restrained Ulysses and all other persons or garnishees from transferring or paying to any third party any of its assets in New York up to $1,464,242.39, and (2) set forth a briefing schedule.

On November 13, 2001, defendants Feldstein, Joan Taverni and Decten Fund L.P. moved for an order: (1) pursuant to 🚩 Rules 9 and 12(b)(1) and (6) of the Federal Rules of Civil Procedure dismissing the amended complaint; (2) enjoining plaintiffs Bridgewater and Ulysses, their officers, directors, agents and employees from pursuing any further claims against those defendants; and (3) such other and further relief as the Court deemed just and proper. These defendants explicitly adopted the arguments made by the Morton Defendants with respect to *Rooker–Feldman, res judicata* and collateral estoppel, but argued separately that, *inter alia,* the complaint failed to state a claim under RICO.

**\*8**  On November 21, 2001, Ulysses filed the Second Amended Complaint against Feldstein. Ulysses is the sole plaintiff in this action, and Feldstein is the sole defendant; the remaining parties were dropped. As with both the Original Complaint and the Amended Complaint, the Second Amended Complaint alleges violations of RICO and common law fraud, but does not allege any violations of 🚩 42 U.S.C. § 1983. [6]

On November 30, 2001, the case was reassigned again from Judge Kaplan to me.

On December 27, 2001, Feldstein moved to dismiss the Second Amended Complaint, pursuant to Rules 9, 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and for injunctive relief. Feldstein filed a supplemental memorandum of law in support of his motion, once again adopting the arguments made by the Morton Defendants with respect to *Rooker–Feldman, res judicata* and collateral estoppel, and arguing separately that, *inter alia,* the complaint failed to state a claim under RICO and that Ulysses' fraud claim should be dismissed.

On or about January 16, 2002, Counterclaim Defendants Solow and Schlesinger filed answers to Morton's Counterclaims. Dreier, however, filed a motion to dismiss Morton's Counterclaims. Dreier argued that the claims seeking to hold him accountable for the acts of his clients, Ulysses and Bridgewater, should be dismissed because "an attorney representing his clients in good faith can not be held legally accountable to third parties for the acts of his clients." (Mem. at 3). Dreier further asserts that he had no "collateral objective" in using the legal process on behalf of his clients. (*Id.* at 5). Dreier argues that Morton's Section 487(a) claim fails because he fails to demonstrate that Dreier intended to deceive the court or any party. (*Id.*). Finally, Dreier states that the Section 1927 claim fails because that statute does not create an independent cause of action. (*Id.* at 6).

## DISCUSSION

### I. Applicable Legal Standards

#### A. Rule 12(b)(1)

In considering a motion to dismiss under Rule 12(b)(1), I must view the complaint in the light most favorable to the plaintiff. *See Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir.1985). A court considering a Rule 12(b)(1) motion to dismiss must "accept as true all material factual allegations in the complaint." *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Id.* at 198 (citing

*Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)). Further, a "court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Antares Aircraft, L.P. v. Fed. Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated for reconsideration on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992), *reaff'd on remand,* 999 F.2d 33 (2d Cir.1993).

#### B. Rule 12(b)(6)

**\*9** When deciding a motion to dismiss under Rule 12(b)(6), I must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader.

*See City of Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (referring to "well-pleaded allegations"); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)). In order to avoid dismissal, plaintiffs must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000) (quoting 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[a][b] (3d ed.1997)). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994).

### II. Ulysses' Second Amended Complaint

#### A. Rooker–Feldman

Feldstein first argues, in part through his adoption of the brief of the Morton Defendants, that Ulysses' claims are barred by the *Rooker–Feldman* doctrine. (Supplemental Mem. Law Supp. Mot. Dismiss Second Am. Compl. at 2).

A challenge pursuant to *Rooker–Feldman* is for lack of subject matter jurisdiction. 🚩 *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996). "Under the *Rooker–Feldman* doctrine, lower federal courts lack subject matter jurisdiction over claims that effectively challenge state court judgments." 🚩⚠ *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002). Further, in addition to claims that were actually litigated in state courts, *Rooker–Feldman* forbids lower federal courts "from exercising jurisdiction over claims that are 'inextricably intertwined' with state court determinations." *Id.* (quoting 🚩 *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482–83 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). A "federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it ." 🚩 *Pennzoil Co. v. Texaco,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring). The Court of Appeals has interpreted the phrase "inextricably intertwined" to mean "at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ..., subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." 🚩 *Moccio,* 95 F.3d at 199–200.

**\*10** **[1]** Feldstein asserts that the Suffolk County Judgment entered by Justice D'Emilio on February 7 precludes Ulysses' instant federal suit. Feldstein cites to the Court of Appeals' decision in ⚠ *Ulysses I & Co. v. Morton,* 11 Fed. Appx. 14 (2d Cir.), *cert. denied,* 534 U.S. 992, 122 S.Ct. 458, 151 L.Ed.2d 376 (2001), which affirmed Judge Hurley's decision in the Eastern District Action discussed above:

> We affirm the district court's conclusion that Ulysses' claims against the individual defendants are barred under the *Rooker–Feldman* doctrine, because these claims all require, at least in part, a determination that Ulysses has property rights in the premises at issue. As such, an adjudication of these claims would necessitate review of Justice

D'Emilio's decision, which is plainly prohibited by *Rooker–Feldman.*

*Id.* at 15–16. In response, Ulysses argues that, while the Suffolk County Action addressed property ownership, the instant action involves "a pattern of mail fraud and wire fraud designed to steal money and harm Ulysses." (Pl.'s Mem. Opp. at 9). Therefore, Ulysses suggests, "[t]his Court is not being asked to determine and need not determine that the state court wrongly decided any issues before it in order for Ulysses to prevail on these RICO claims." (*Id.*).

Ulysses' federal claims are barred by *Rooker–Feldman* because they are "inextricably intertwined" with the Suffolk County Judgment. It is true that, unlike in the Suffolk County Action, Ulysses is not seeking possession of the Premises here. The claims raised in Ulysses' Second Amended Complaint, however, in essence seek damages for losing the Premises to Feldstein, which claims directly implicate the propriety of the Suffolk County Judgment. Indeed, the Second Amended Complaint focuses almost exclusively on the Sales Contract between Rounick and Feldstein, along with the subsequent disputes among the parties about whom the Premises actually belongs to. Ulysses' RICO claims can only succeed to the extent that Justice D'Emilio wrongly decided the issues before him with respect to the Suffolk County Action. Accordingly, jurisdiction is lacking in this court to hear those claims. *See, e.g.,* ⚠ *Goldberg v. Roth,* No. 99 Civ. 11591, 2001 WL 1622201, at \*5 (S.D.N.Y. Dec.17, 2001) ("Here, Plaintiff seeks to have me review and 'cure' determinations made by New York state courts. Indeed, many of the constitutional, RICO, conspiracy and other claims asserted by Plaintiff seemingly arise from the alleged injustices of the state court decisions. Plaintiff cannot make an end run around the *Rooker–Feldman* doctrine and into federal court, however, through the mere assertion of new and baseless claims to supplement the old."); ⚠ *Rene v. Citibank NA,* 32 F.Supp.2d 539, 543 (E.D.N.Y.1999) (concluding that the Court lacks subject matter jurisdiction under *Rooker–Feldman* to hear plaintiffs' RICO and 🚩 Section 1983 claims because "plaintiffs ask this Court to review the state court's judgment of foreclosure and eviction, by seeking damages for the loss of their property"); ⚠ *Zipper v. Todd,* No. 96 Civ. 5198(WK), 1997 WL 181404, at \*3 (S.D.N.Y. Apr.14, 1997) ("While it is true that plaintiffs never actually raised the federal claims of 🚩 Section 1983, RICO and SLAPP

RICO Bus.Disp.Guide 10,338

violations before the state court, *Rooker–Feldman* precludes district court review of claims 'inextricably intertwined' with state court determinations. The fact that plaintiffs raise new claims under federal statutes does not preclude a finding that they are barred by the *Rooker–Feldman* doctrine."); *see also, e.g.,* 🚩 *Harris v. New York State Dep't of Health,* 202 F.Supp.2d 143, 166–67 (S.D.N.Y.2002) (barring plaintiff's ADA and Rehabilitation Act claims because they were "integrally connected with the matters decided in the state administrative proceedings" and "implicate[d] the essence of the issue adjudicated by the state court"); 🚩 *In Re Goetzman,* 91 F.3d 1173, 1177 (8th Cir.1996) (plaintiff barred under *Rooker–Feldman* from seeking a federal judgment that would alter a state court judgment when "the heart of the state court proceedings" involved a determination of the plaintiff's mortgage payment).

**\*11** Even if *Rooker–Feldman* were otherwise applicable to the Suffolk County Judgment, Ulysses argues, the doctrine would still not apply because "Ulysses alleges that the state court judgment was obtained through fraud." (Pl.'s Mem. Opp. at 10). The Court of Appeals has held, however, that it has "never recognized a blanket fraud exception to *Rooker–Feldman.*" ⚠️ *Johnson v. Smithsonian Institution,* 189 F.3d 180, 186 (2d Cir.1999); *see also* ⚠️ *Kropelnicki,* 290 F.3d at 128 (finding that plaintiff's misrepresentation claim was barred by *Rooker–Feldman* "even accepting as true her claim that she was kept out of the state court action in the first instance by the defendants' misrepresentation"); ⚠️ *Azumendi v. Roth,* No. 99 Civ. 3663(WK) (DF), 2002 WL 441283, at \*10 (S.D.N.Y. Mar. 20, 2002) (plaintiff's allegations of fraud against defendants, *i.e.,* that "defendants falsely created appearance that decedent lived in New York" and that the Surrogate's Court "fraudulently acquired jurisdiction over decedent's estate," did not preclude dismissal under *Rooker–Feldman* ); 🚩 *Bell v. State,* No. 99 Civ. 5809(AGS), 2000 WL 1273637, at \*4 (S.D.N.Y. Sept.7, 2000) ("[T]he fact that the plaintiff alleges [in federal court] that the State court judgment was procured fraudulently does not remove his claims from the ambit of *Rooker–Feldman."* (quoting ⚠️ *Dockery v. Culley & Dykman,* 90 F.Supp.2d 233, 236 (E.D.N.Y.2000))); 🚩⚠️ *Simpson v. Putnam County Nat'l Bank,* 20 F.Supp.2d 630, 633 (S.D.N.Y.1998) ("Under *Rooker–Feldman* ... this Court has no authority to review the State Court's judgment. Nor does the fact that plaintiff alleges

that the State Court foreclosure judgment was procured by fraud and conspiracy change that result.").

### B. *Res Judicata*

Feldstein also asserts, again in part through his adoption of the brief of the Morton Defendants, that all of Ulysses' claims are barred by *res judicata.* (Supplemental Mem. Law Supp. Mot. Dismiss Second Am. Compl. at 3).

*"Res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." 🚩 *Thompson v. County of Franklin,* 15 F.3d 245, 253 (2d Cir.1994) (citations omitted). Under the doctrine of *res judicata,* "once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the 'transaction, or series of connected transactions, out of which the [first] action arose." ' 🚩 *Maharaj v. BankAmerica Corp.,* 128 F.3d 94, 97 (2d Cir.1997) (citation omitted). Further, *res judicata* "prevents a plaintiff from relitigating claims that were or could have been raised in a prior action against the same defendant where that action has reached a final judgment on the merits." 🚩 *L–Tec Elecs. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 87–88 (2d Cir.1999); *see also* 🚩 *Greenberg v. Board of Governors of the Fed. Reserve Sys.,* 968 F.2d 164, 168 (2d Cir.1992) (*res judicata* bars both "issues actually decided in determining the claim in the first action and ... issues that could have been raised in the adjudication of that claim" (citation omitted)). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." 🚩 *L–Tec,* 198 F.3d at 88; *see also* 🚩 *Singh v. Parnes,* 199 F.Supp.2d 152, 158 (S.D.N.Y.2002) ("[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies."). "To prove that a claim is precluded under this doctrine, 'a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." ' 🚩 *Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir.2001) (quoting 🚩 *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 284–85 (2d Cir.2000)). [7]

**\*12 [2]**  *Res judicata* mandates dismissal of all of Ulysses' claims. Ulysses asserts that "[w]hether these acts were illegal," "whether these acts injured Ulysses" and "whether [Feldstein's alleged wrongdoing] may give rise to RICO liability" has "never been addressed," (Pl.'s Mem. Opp. at 13), and that Ulysses' RICO action "seeks a different remedy" from the Eastern District Action, which alleges, *inter alia,* civil rights violations, (*id.* at 15). These assertions, however, miss the point. Feldstein's alleged wrongdoing could have been addressed in the Eastern District Action: both Ulysses and Feldstein were parties to that action and the "facts surrounding the transaction or occurrence" supporting Ulysses' RICO claim and state law claims were substantially the same at the time Ulysses filed its Eastern District Action. (*See* Notice of Motion to Dismiss SAC, Supplemental Declaration of Kevin L. Smith, sworn to on December 27, 2001, Ex. 11 (comparing factual allegations in the Eastern District Action with factual allegation in Ulysses' instant RICO complaint)). Further, the Eastern District Action was adjudicated on the merits. *See* ⚠ *Ulysses,* 11 Fed. Appx. 14; *see also, e.g., Kalka v. Kucher Kraus & Bruh, LLP,* No. 99 Civ. 4999(MBM), 2000 WL 557266, at \*9 (S.D.N.Y. May 8, 2000) ("[Plaintiff] claimed in the state courts that she had a contract to buy the apartment at issue, that certain of her payments were mischaracterized as down payments rather than rent payments, and that she should not have been evicted. Again, her assertions and defenses were rejected. Further, she sued Yuri Chuu in this court for conduct arising out of the dispute over the Chuu apartment, and agreed to dismiss that case, with prejudice, on January 5, 1999. Whether or not she asserted RICO claims in that case, she could have."). [8]

Ulysses asserts that *res judicata* should not bar the RICO action because certain of the predicate acts forming these claims "were not discovered and, in part did not occur," until after Justice D'Emilio's decision in the Suffolk County Action and the decision in the Eastern District Action "predicated on Justice D'Emilio's decision." (Pl.'s Mem. Opp. at 13). I reject this argument. "As a general rule, newly discovered evidence does not preclude the application of *res judicata.*" 🚩 *Saud v. Bank of New York,* 929 F.2d 916, 920 (2d Cir.1991). "Exceptions to this rule exist when the evidence was either fraudulently concealed or when it could not have been discovered with due diligence." *Id* . But Ulysses has not identified which predicate acts "in part did not occur" that could arguably form the basis to invoke either exception. In any event, the transaction, or series of connected transactions, out of which the Eastern District Action—and, it appears, the

Suffolk County Action—arose had already occurred by the time the Original Complaint, let alone the Second Amended Complaint, was filed. Permitting Ulysses to continue its action at this stage "would elevate form over substance and undermine the fundamental purposes behind the doctrine of *res judicata.*" 🚩 *Saud v. Bank of New York,* 734 F.Supp. 628, 636 (S.D.N.Y.1990), *aff'd,* 🚩 929 F.2d 916; *see also, e.g., Waldman v. Village of Kiryas Joel,* 39 F.Supp.2d 370, 379 (S.D.N.Y.1999) (concluding that *res judicata* barred resident's Establishment Clause claims even though complaint relied on facts that post-dated prior judgments), *aff'd,* 🚩 207 F.3d 105 (2d Cir.2000).

### C. Failure to state a RICO claim

**\*13**  Because Ulysses' Second Amended Complaint is dismissed pursuant to *Rooker–Feldman* and *res judicata,* I need not address Feldstein's assertion that Ulysses has failed to state a RICO claim.

### D. Injunctive Relief

Finally, Feldstein moves to enjoin Ulysses and their officers, directors, agents and employees from pursuing any further claims against Feldstein.

### 1. Standard

Federal courts may enjoin a party from initiating future vexatious litigation. *See* 🚩 *Malley v. New York City Bd. of Educ.,* 112 F.3d 69 (2d Cir.1997); 🚩 *Pentagen Technologies Int'l Ltd. v. United States,* 172 F.Supp.2d 464 (S.D.N.Y.2001). "The federal courts have an institutional concern and obligation to 'protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." ' *Carlin v. Gold Hawk Joint Venture,* 778 F.Supp. 686, 694 (S.D.N.Y.1991) (citation omitted).

"In determining whether or not to restrict a litigant's future access to the courts, courts in this Circuit consider the following factors:

(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.,* does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has

caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties."

*Lipin v. Nat'l Union Ins. Fire Co.,* 202 F.Supp.2d 126, 142 (S.D.N.Y.2002) (quoting 🚩 *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986)). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." 🚩 *Safir,* 792 F.2d at 24. A court may deny injunctive relief based on the defense of unclean hands "where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." 🚩 *Estate of John Lennon v. Screen Creations, Ltd.,* 939 F.Supp. 287, 293 (S.D.N.Y.1996) (citation omitted). But "[m]isconduct ... unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands." 🚩 *Dunlap–McCullen v. Local 1–S, AFL–CIO–CLC,* 149 F.3d 85, 90 (2d Cir.1998) (quoting 🚩 *A.H. Emery Co. v. Marcan Prods. Corp.,* 389 F.2d 11, 18 (2d Cir.1968)). Further, "[t]he unclean hands defense is not an automatic or absolute bar to relief; it is only one of the factors the court must consider when deciding whether to exercise its discretion and grant an injunction." *Id.* (quoting 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2946, at 111 (1995)).

2. Permanent Injunction Against Ulysses

**\*14** **[3]** An injunction here is proper. First, as other judges and justices have observed, Ulysses has a history of duplicative litigation with respect to ownership of the Premises—although, admittedly, Ulysses seeks monetary damages in this case rather than ownership. *See, e.g.,* 🔺 *Ulysses,* 11 Fed. Appx. at 15 (finding that the claims in the Eastern District Action "all require, at least in part, a determination that Ulysses has property rights in the premises at issue"); Notice of Motion to Dismiss SAC, Ex. 9, at 5 ("From the history of the suits, it appears that this appeal and Bridgewater's motions underlying the orders from which Bridgewater appeals [to the Southern District of Florida] are yet another attempt by Ulysses to gain possession of the Hamptons property."). Second, Ulysses cannot have had an objective good faith expectation of prevailing in this case. It knew or should have known that there was

a substantial likelihood that its RICO complaint would be dismissed pursuant to *Rooker–Feldman* and *res judicata*—especially considering that the Court of Appeals just last year dismissed the Eastern District Action expressly based on, *inter alia, Rooker–Feldman.* Third, Ulysses is represented by counsel, which weighs in favor of an injunction. *See Iwachiw v. New York City Bd. of Educ.,* 194 F.Supp.2d 194, 208 (E.D.N.Y.2002) (fact that plaintiff is proceeding *pro se* weighs against an injunction). Fourth, Ulysses has caused needless expense to Feldstein and continues to burden unnecessarily numerous courts and their personnel across the nation, as the facts in the instant complaint essentially arise out of the same facts in a number of previous actions. Fifth, it does not appear that any other sanction short of an injunction will be adequate to protect the courts and other parties from Ulysses' insatiable appetite for litigating about the Premises.

Courts within this Circuit have found that, "when a litigant has shown a pattern of abusing different district courts around the country, an injunction which applies to all federal district courts is warranted." *Sassower v. Abrams,* 833 F.Supp. 253, 270 (S.D.N.Y.1993); *see Iwachiw,* 194 F.Supp.2d at 208 (requiring plaintiff to seek leave from the court before filing any additional actions against certain parties arising out of or relating to alleged conspiracy to fix bid prices and elimination of the plaintiff as a potential bidder for the sale of equipment and services); *Fitzgerald v. Field,* No. 99 Civ. 3406(RWS), 1999 WL 1021568, at \*6 (S.D.N.Y. Nov.9, 1999) ("The least restrictive, yet effective, means of preventing further vexatious litigation by Fitzgerald is to enjoin him from filing any civil lawsuit in this Circuit without first obtaining leave of court."); *Jones v. Newman,* No. 98 Civ. 7460(MBM), 1999 WL 493429, at \*14 (S.D.N.Y. June 30, 1999) (enjoining plaintiff from filing "any civil lawsuit related to the underlying subject matter of this suit, other than a petition for habeas corpus, in any court of the United States" without first obtaining leave of such court); 🚩 *In re NASDAQ Market–Makers Antitrust Litigation,* 187 F.R.D. 124, 132 (S.D.N.Y.1999) ("It appears that the least restrictive, but effective, means of protecting plaintiffs and the Court from further vexatious litigation by Genins is to enjoin him from filing any further papers in this court that relate in any way to *In re NASDAQ* without first obtaining prior leave of court.").

**\*15** Injunctive relief directed towards state courts is, if properly framed, also appropriate. In Schlesinger's opposition brief to imposition of a permanent injunction against Ulysses, he asserts that "the courts of this Circuit have consistently

refused to tell state courts who can and cannot seek redress before them." (Schlensinger Mem. Law Opp. to Order to Show Cause, at 14). For support, Schlesinger cites *In re Martin–Trigona,* 737 F.2d 1254 (2d Cir.1984). That case does not support Schlesinger's position. In *Martin–Trigona,* the district court had enjoined Anthony Martin–Trigona ("Martin–Trigona") from, *inter alia:* (1) "making further filings in any pending case brought by him or on his behalf within the District of Connecticut without first obtaining leave of the court"; and (2) "filing any action *in any state or federal court in the United States"* arising out of the bankruptcy proceedings at issue in that case. *Id.* at 1258–59 (emphasis added). The district court provided that, to obtain leave of the court, Martin–Trigona was required to append certain informational materials to his pleadings, including a "Motion Pursuant to Court Order Seeking Leave to File." *Id.* at 1258 n. 3.

On appeal, the Court of Appeals found that the restrictions placed upon Martin–Trigona from bringing "new actions in all federal district courts" was "necessary and proper," *id.* at 1262, but that "extension of the terms of the injunction to state courts" was improper, *id.* at 1263. The Court of Appeals further recognized, however, that it was entirely appropriate to warn state courts about vexatious litigators:

> [T]he protection of federal jurisdiction does not necessarily require extension of each provision of the injunction to actions brought in state courts. It is our independence from other branches of government which is the source of our power to enjoin Martin–Trigona, but that very independence militates against extension of the terms of the injunction to state courts. Abuse of state judicial processes is not *per se* a threat to the jurisdiction of Article III courts and does not *per se* implicate other federal interests. We therefore believe that the district court erred in its blanket extension of the injunction to state courts.
>
> It does not follow, however, that some qualifications relating to the protection of federal interests may not be placed upon Martin–Trigona's resort to state courts. First, while comity usually requires us to abstain from intrusion into state proceedings, *a spirit of cooperative federalism calls upon us to alert state courts to Martin–Trigona's past activities so they may take judicial notice of matters relevant to new litigation brought by him.* Upon remand, therefore, the district court should continue the provisions of the injunction requiring Martin–Trigona to append pertinent informational materials to pleadings in state courts.
>
> Second, protection of our jurisdiction requires that we shield federal litigants, their counsel, court personnel, their families and professional associates from Martin–Trigona's vexatious litigation in all courts, state or federal.

***16*** *Id.* at 1262–63 (emphasis added). The Court of Appeals concluded that the district court had "erred in its blanket extension of the injunction to state courts" and remanded the case back to the district court to modify the injunction. *Id.* at 1263. On remand, the district court entered a new injunction that, *inter alia:* (1) permanently enjoined Martin–Trigona from initiating any action without leave of the court against certain individuals in the United States Bankruptcy Court for the District of Connecticut, the United States District Court for the District of Connecticut or in the Court of Appeals for the Second Circuit; and (2) required Martin–Trigona to append to any document that either commences a new lawsuit or intervenes in a then-existing lawsuit certain documents, including a statement entitled "Informational Statement Concerning Litigation History of Anthony R. Martin–Trigona, Pursuant to Court Orders." *In re Anthony R. Martin–Trigona,* 592 F.Supp. 1566, 1573 (D.Conn.1984). The Court of Appeals affirmed the form of this new injunction, as it "complie[d] faithfully with out prior decision." *In re Anthony R. Martin–Trigona,* 763 F.2d 140, 141 (2d Cir.1985). Therefore, the injunction requested to be issued in this case is, in fact, consistent with the Court of Appeals' *Martin–Trigona* decision.

Finally, I reject Schlesinger's allegation that Feldstein is barred from obtaining injunctive relief because of Feldstein's own unclean hands. (Schlensinger Mem. Law Opp. to Order to Show Cause, at 11–12). Feldstein's alleged misconduct is unrelated to Ulysses' status as a serial litigator with respect to the Premises. In any event, even if it were related, the other factors weigh heavily in favor of granting an injunction.

### III. Morton's Counterclaims

Dreier moves to dismiss Morton's Counterclaims. All of Morton's Counterclaims are state law claims except one: a claim pursuant to 28 U.S.C. § 1927 for reasonably incurred excess costs, expenses and attorneys' fees.

#### A. Section 1927

RICO Bus.Disp.Guide 10,338

**[4]** 28 U.S.C. § 1927, entitled "Counsel's liability for excessive costs", provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

An award of sanctions under Section 1927 requires a showing that an attorney undertook or continued a litigation in bad faith, or for some improper purpose such as harassment or delay. *Oliveri v. Thompson,* 803 F.2d 1265, 1272–73 (2d Cir.1986).

As the Court of Appeals has noted, however, Section 1927 does not create an independent cause of action:

> [F]ederal question jurisdiction [may not] be premised on § 1927, for that section does not appear to authorize an independent lawsuit. It provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The power thereby described is the power of the courts to punish an attorney who conducts frivolous or dilatory litigation by awarding the other side compensation "as part of the costs in the litigation." Though under the present § 1927 "attorneys' fees were intended to be among the costs which a party could request after litigation was completed," the request for such an award is nonetheless made in the case in which the attorney's unreasonable conduct is alleged to have occurred. *We have seen no basis for concluding that § 1927 was intended to permit a litigant to institute a new lawsuit to collect excess costs and fees incurred in a prior litigation.* ... As a statute with a punitive thrust, § 1927 is to be strictly construed, and we cannot conclude that it provides a basis for the present suit.

**\*17** *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 69–70 (2d Cir.1990) (emphasis added) (citations omitted). Therefore, this purported claim is dismissed.

### B. State Law Claims

With respect to Morton's state law claims, I must determine whether it is proper for me to exercise supplemental jurisdiction over these claims.

Federal courts have power to decide state law claims that "derive from a common nucleus of operative fact" with claims arising under federal law. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Pursuant to 28 U.S.C. § 1367(c)(3), however, a district court may nonetheless decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." Here, all of the claims over which this Court had original jurisdiction have been dismissed. Further, Morton is not any longer even a party to the action over which the Court had original jurisdiction. Accordingly, I decline to exercise supplemental jurisdiction over the Morton Counterclaims, and those claims are dismissed without prejudice.

### IV. Notices of Pendency

While still a defendant in the Amended Complaint, Morton moved by order to show cause to vacate the three notices of pendency filed with the Clerk of Suffolk County by either Bridgewater or Ulysses based upon (1) the Amended Complaint, (2) an unfiled action in the Southern District of New York ostensibly brought on behalf of the United States, and (3) the Eastern District Action.

### A. Cancellation

**[5]** Pursuant to Rule 64 of the Federal Rules of Civil Procedure, I must look to state law to govern the matter of lis pendens. [9] *See* Fed.R.Civ.P. 64; *State Street Bank & Trust Co. v. Trafalgar Power Inc.,* No. 95–CV–493 (FJS), 1997 WL 369384, at \*2 (N.D.N.Y. June 23, 1997). Section 6514 of the Civil Practice Law and Rules ("CPLR"), entitled "Motion for cancellation of notice of pendency," provides in pertinent part:

> (a) Mandatory cancellation. The court, upon motion of any person aggrieved and upon such notice as it may require, shall direct any county clerk to cancel a notice of pendency, if service of a summons has not been completed within

the time limited by section 6512; or if the action has been settled, discontinued or abated....
N.Y. Civ. Prac. L. & R. § 6514(a) (McKinney's 1980). Here, all three actions underlying the notices of pendency filed by Ulysses on the Premises have been "settled, discontinued or abated." *Id.* Therefore, the three notices of pendency filed by Ulysses and Bridgewater shall be cancelled. [10]

B. Costs

Morton also seeks to recover costs against Ulysses in connection with the three notices of pendency. Section 6514(c) of the CPLR provides:

> Costs and expenses. The court, in an order cancelling a notice of pendency under this section, may direct the plaintiff to pay any costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action.

**\*18** I find that an award of costs against Ulysses pursuant to CPLR 6514(c) is not warranted under the circumstances of this case. *See, e.g.,* 📁 *Rabinowitz v. Larkfield Building Corp.,* 231 A.D.2d 703, 647 N.Y.S.2d 820, 821–22 (App.Div.2d Dept.1996) (finding that award of costs and expenses was not warranted even though notice of pendency was canceled).

CONCLUSION

Ulysses has had so many bites at the apple, it has swallowed the core. Ulysses and its principals have repeatedly used their substantial resources to impose upon the scarce resources of the state and federal courts of several districts and states. They shall not be permitted to continue to do so. Accordingly, Feldstein's motion to dismiss the Second Amended Complaint is granted, Morton's state counterclaims are dismissed without prejudice, and Morton's federal counterclaim is dismissed with prejudice. The Clerk of the Court, Supreme Court, County of Suffolk, is directed to cancel the three notices of pendency filed by Ulysses and Bridgewater.

Counsel shall confer and deliver a proposed form of judgment no later than August 12, 2002, at 4 p.m. If they are not in agreement, counsel shall appear at a conference to discuss the proposed order on August 14, 2002, at 12:00 p.m., Courtroom 12A, United States District Court, Southern District of New York, 500 Pearl Street, New York, New York.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 1813851, RICO Bus.Disp.Guide 10,338

---

### Footnotes

1    Solow admittedly has a financial interest in Ulysses. (Notice of Motion, Declaration of Kevin L. Smith, sworn to on November 13, 2001 ("Smith Decl."), ¶ 18 & Ex. D). Schlesinger is an officer of Ulysses—allegedly its president. (Schlesinger Mem. Opp. Order to Show Cause, at 17). Ulysses is an affiliate of Bridgewater by reason of common ownership and control. (Notice of Motion to Dismiss the Second Amended Complaint and For Injunctive Relief ("Notice of Motion to Dismiss SAC"), Ex. 9, at 4).

In his deposition, Schlesinger disclosed that Ulysses does not appear to operate as a business:

Q: Are there any full-time employees of [Ulysses]?

A: No.

Q: Are there any part-time employees of the company?

**Ulysses I & Co., Inc. v. Feldstein, Not Reported in F.Supp.2d (2002)**
Case 3:24-cv-00074-BKS-ML   Document 4   Filed 01/26/24   Page 53 of 67
RICO Bus.Disp.Guide 10,338

A: No.

Q: Does the company have a payroll?

A: No.

Q: Does Mr. Cherniak receive any compensation for acting as vice president?

A: No.

Q: Do you know what he does for a living?

A: He is an officer of Solow Development Corporation. I think he is an officer. He is involved with Solow Development Corporation.

(Reply Declaration of Kevin L. Smith in Further Support of Feldstein's Motion to Dismiss the Second Amended Complaint ("Smith Reply Decl."), Ex. 3, at 10).

2      Ulysses was incorporated on or about August 17, 1998—approximately eight days before Rounick sold the premises pursuant to the Ulysses Sales Contract. (Smith Reply Decl., Ex. 2).

3      With respect to Ulysses' argument that "the judgment departs from Justice D'Emilio's decision," (*id.* at 34, 🚩 647 N.Y.S.2d 820), Judge Hurley found that "[t]o the extent there's an irregularity in the judgment, that should have been addressed in the State, presumably to Justice D'Emilio," 🚩(*id.* at 35, 647 N.Y.S.2d 820).

4      The so-called "Amended Complaint" is not technically an amendment to the Original Complaint, but rather an entirely new complaint with a different docket number (01 CV 9026). The civil cover sheet for the Amended Complaint indicates that a similar case assigned to Judge Owen—*i.e.,* the Original Complaint—had been voluntarily dismissed on October 10, 2001. (OTSC, Ex. 15). The Original Complaint, however, was never actually discontinued. On the same day that the Amended Complaint was filed, it was referred to Judge Owen as possibly related to the Original Complaint (01 CV 3102). On October 18, 2001, Judge Owen accepted reference of the Amended Complaint.

5      On October 11, 2001, Smith wrote to Schlesinger at Ulysses advising that Schlesinger could pick up a check for Ulysses in the amount of $2,136,833.33 representing the balance of the purchase price due under the relevant contract after adjustment for the relevant transfer tax. (OTSC Exhibits, Ex. 24). Smith indicated, however, that he would only hand over the check "upon signing a receipt for them and delivering [sic] cancellations of the three Notices of Pendency which Ulysses and Bridgewater Operating Corp. filed against the Premises." (*Id.* at 1, 🚩 647 N.Y.S.2d 820). Apparently neither Ulysses nor any of its representatives have done so.

The status of these Notices of Pendency is not entirely clear. (*See* Schlesinger Mem. Opp. Order to Show Cause, at 15 ("[C]ertain intervening factors have caused the Notices of Pendency to become ineffective since their filing....").

6      By letter to Judge Kaplan dated November 23, 2001, Ulysses indicated that, because Morton was no longer a defendant, "the emergency proffered as a basis for the Order to Show Cause no longer exists." (Letter from Dreier to Judge Kaplan, dated November 23, 2001).

7      *Res judicata* and *Rooker–Feldman* are distinct doctrines:

[T]he precise demarcations of the *Rooker–Feldman* doctrine on the one hand, and the preclusive effect of common law *res judicata* and collateral estoppel on the other, remain obscure. Some courts hold them effectively synonymous, interchangeable or at least co-extensive. Other courts have conflated the doctrines altogether, citing *Rooker–Feldman* as support for application of what they held to be dismissal based on *res judicata.* A leading treatise characterizes *Rooker–Feldman* as a "transmutation of res judicata doctrine into jurisdictional dogma." And one circuit court has described the principle as "a combination of the abstention and res judicata doctrines...."

And yet the doctrines differ in fundamental ways that may materially affect how a case may be decided. The Supreme Court has instructed that the *Rooker–Feldman* principle addresses the subject matter jurisdiction of federal district courts.... By contrast, res judicata and collateral estoppel, resting on common law principles, are affirmative defenses which, if not pleaded, may be waived.

⚑ *Harris,* 202 F.Supp.2d at 158–60 (citations omitted).

8    Further, Feldstein asserts that Ulysses' claims are barred by collateral estoppel. Because I find, however, that Ulysses' claims are barred by *Rooker–Feldman* and *res judicata,* I need not address Feldstein's collateral estoppel arguments.

9    The terms "notice of pendency" and "lis pendens" are essentially interchangeable. *See* ⚑ *In re American Motor Club, Inc.,* 109 B.R. 595, 596 n. 1 (Bankr.E.D.N.Y.1990) ("Although technically there are differences between the doctrine of lis pendens at common law and the statutory provisional remedy of notice of pendency, since the CPLR uses the phrase 'notice of pendency' and the bench and bar more often use[ ] the term 'lis pendens,' this Court will use them interchangeably." (citation omitted)).

10    This Court has the power to cancel Notices of Pendency. *See, e.g., Peddie v. 2436 Marion Ave. Ass'n,* No. 01 Civ. 1239(LTS) (HBP), 2001 WL 995337, at *2 (S.D.N.Y. Aug. 30, 2001).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 55 of 67

2021 WL 2775003
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rikisha S. SMITH, Plaintiff,

v.

Joseph JACKSON, Defendant.

5:21-CV-0005 (MAD/ML)
|
Signed 07/02/2021

**Attorneys and Law Firms**

RIKISHA S. SMITH, 223 Otisco Street, Syracuse, New York 13204, Plaintiff, Pro Se.

## ORDER

Mae A. D'Agostino, U.S. District Judge:

**\*1** On January 5, 2021, Plaintiff commenced this action against numerous Defendants including Joseph Jackson, Shawn Corey Carter, Beyonce Giselle Knowles, Andrew Jackson, Katherine Jackson, Erika Badoo, Willow Smith, Patriots, Saints, James Madison, James Monroe, and James K. Polk. *See* Dkt. No. 1. Plaintiff's complaint alleges causes of action under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634(b), American with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See generally id.* The instant complaint is the latest in a string of unintelligible and incoherent pleadings filed by Plaintiff in this District. As with each of the other complaints, two of which have been reviewed by the undersigned, Plaintiff has failed to plausibly allege any entitlement to relief. Accordingly, this action is dismissed with prejudice. Additionally, in light of Plaintiff's history of frivolous filings, the Court will refer to Chief Judge Glenn T. Suddaby the recommendation from Magistrate Judge Lovric that Plaintiff be permanently enjoined from filing any other case in this District without leave of the Chief Judge, unless represented by counsel.

In an Order and Report-Recommendation dated January 11, 2021, Magistrate Judge Lovric denied Plaintiff's *in forma pauperis* ("IFP") application as moot, as Plaintiff had already paid the statutory filing fee. *See* Dkt. No. 5 at 5. Additionally, Magistrate Judge Lovric performed an initial review of the complaint and recommended that the Court dismissed Plaintiff's complaint without leave to replead. *See id.* at 6. Magistrate Judge Lovric found that Plaintiff's complaint was "comprised of twenty-one pages of incoherent text written on every form-complaint from the Clerk's office." *Id.* at 6. Further, Magistrate Judge Lovric found that, "[a]s the Complaint is currently drafted, the Court is unable to meaningfully analyze, whether, and to what extent, Plaintiff has pleaded any colorable claim against Defendant." *Id.* at 7. While noting the policy in this Circuit of affording *pro se* litigants the opportunity to amend their pleadings prior to outright dismissal, Magistrate Judge Lovric nevertheless recommended that this action be dismissed without leave to amend. Id. at 7–9. In addition, Magistrate Judge Lovric undertook a thorough and comprehensive review of each of the prior cases filed by Plaintiff in this District. *See id.* at 2–5. Two of the three suits have been dismissed as frivolous, and the last one is currently before the undersigned. *See id.* As such, Magistrate Judge Lovric found that Plaintiff "fits the mold of a pestilent litigator who can only be estopped from pursuing frivolous litigation by sanctions more austere than dismissing her actions." *Id.* at 11. Magistrate Judge Lovric recommended "in addition to dismissal of the within case ... [with] the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings, Plaintiff [should] be prohibited from making any future filings in this District without prior leave of the Chief Judge." *Id.* at 12. Plaintiff has not objected to the Order and Report-Recommendation.

**\*2** When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 56 of 67

or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the January 11, 2021 Order and Report-Recommendation, Plaintiff's complaint and the applicable law, the Court finds that Magistrate Judge Lovric correctly determined that the complaint should be dismissed. A review of Plaintiff's complaint makes clear that it suffers from several deficiencies. Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). An opportunity to amend, however, is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Here, reading the complaint liberally, there is no "suggest[ion] that the plaintiff has a claim that [she] has inadequately

or inartfully pleaded and ... should therefore be given a chance to reframe." *Cuoco*, 222 F.3d at 112. Moreover, the Court agrees with Magistrate Judge Lovric that Plaintiff is "a pestilent litigator who can only be estopped from pursuing frivolous litigation by sanctions more austere than dismissing her actions." Dkt. No. 5 at 11. As such, Magistrate Judge Lovric correctly recommended that the Court dismiss the complaint with prejudice and that Plaintiff should be referred to Chief Judge Suddaby for a determination whether Plaintiff should be permanently enjoined from filing any additional cases in this District without first obtaining leave from the Chief Judge.

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Lovric's Order and Report-Recommendation (Dkt. No. 5) is **ADOPTED in its entirety** for the reasons set forth therein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with prejudice;** and the Court further

**ORDERS** that the Court refers to Chief Judge Suddaby the recommendation by Magistrate Judge Lovric that Plaintiff be permanently enjoined from filing any other case in this District without leave of the Chief Judge, unless she is represented by counsel; and the Court further

 **\*3** **ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 2775003

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 57 of 67

Yefimova v. Trustco Bank, Not Reported in Fed. Supp. (2017)

2017 WL 4216987
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Lyubov YEFIMOVA, Plaintiff,
v.
TRUSTCO BANK, Defendant.

Civ. No. 1:17-CV-730 (GTS/DJS)
|
Signed 07/31/2017

**Attorneys and Law Firms**

LYUBOV YEFIMOVA, 101 S. Pearl Street, Apr. EIL, Albany, New York 12207, pro se.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent for review a civil Complaint filed by *pro se* Plaintiff Lyubov Yefimova. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but instead submitted a Motion for Leave to Proceed *In Forma Pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate Order, dated July 25, 2017, this Court granted Plaintiff's Application to Proceed IFP.

In accordance with 28 U.S.C. § 1915(e), the Court has conducted a *sua sponte* review of the Complaint. Because the pleading fails to satisfy basic pleading requirements, as more fully discussed below, and because the actions complained of have already been deemed frivolous in this District and in the Southern District of New York, I recommend dismissal without leave to amend. Furthermore, in light of Plaintiff's abuse of the judicial process in this District, I recommend the issuance of an anti-injunction order preventing Plaintiff from filing any further actions in this District without prior permission from the Chief District Judge.

### I. DISCUSSION

#### A. Pleading Requirements

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990)*, and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983)* (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (citing *Bell Atl. Corp. v. Twombly, 550 U.S. at 556*). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly, 550 U.S. at 555*). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id. at 679* (quoting FED. R. CIV. P. 8(a)(2)). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id. at 678 & 679* (further citing *Bell Atl. Corp. v. Twombly, 550 U.S. at 555*, for the proposition that Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown, 335 Fed.Appx. 102, 104 (2d Cir. 2009)*.

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 58 of 67

Yefimova v. Trustco Bank, Not Reported in Fed. Supp. (2017)

## B. Review of the Complaint

**\*2**  Plaintiff's terse pleading is three pages long, consisting of a brief list of the parties involved, two separately enumerated typed paragraphs, two separately enumerated handwritten paragraphs, and two enumerated paragraphs that seem to be in a different language. *See generally* Compl. The basis for the Court's jurisdiction is stated as follows: "This is a civil action relief and damages to defend and protect the rights guaranteed by this United States." *Id.* at p. 1.[1] As best as I can tell, the factual basis supporting the lawsuit against Trustco Bank revolves around $28,000, which Plaintiff apparently stored in a safe at some unspecified Trustco Bank location and had reportedly been stolen by individuals, possibly in 2013, who may or may not have been criminally prosecuted for such criminal act. *Id.* at pp. 1-2. While it is not clear at which Trustco Bank location the theft allegedly occurred, it seems that by this lawsuit, Plaintiff attempts to hold Trustco Bank responsible for the loss of her money as she was apparently only reimbursed $10,000 of the $28,000 that had been stored there.

It is clear that in its present form, the Complaint fails to satisfy basic the pleading requirements set forth in Federal Rules of Civil Procedure 8 and 10.[2] The allegations of fact are not clearly stated in separately enumerated paragraphs, but rather, are included in two rambling, sometimes incoherent paragraphs. While a description of the parties in this lawsuit and the relief sought, *i.e.* monetary damages, is included in the pleading, it is not clear whether the Court maintains the requisite jurisdiction to entertain such a lawsuit or if this would be the proper venue. In this regard, as noted above, the Complaint is devoid of a proper statement regarding the jurisdictional basis, either federal question or diversity jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, and contains few clear allegations of facts by which the Court could assess the contours of the claim being asserted.

In light of such shortcomings, the Complaint is subject to dismissal. Ordinarily, in consideration of her *pro se* status, prior to outright dismissal, this Court would typically recommend allowing Plaintiff an opportunity to amend her pleading in order to cure any deficiencies noted above. *See Simmons v. Abruzzo,* 49 F.3d 83, 86-87 (2d Cir. 1995). However, such effort would be futile in light of the Court's review of Plaintiff's litigation history in this Court and in the

Southern District of New York wherein Plaintiff has already, on multiple occasions, attempted to bring a lawsuit based upon these same facts against this same Defendant but has been rebuffed on each occasion.

Most recently, on May 15, 2017, in a civil action brought by Plaintiff against Trustco Bank in this District Court, the Honorable Thomas J. McAvoy, Senior United States District Judge, issued a Decision and Order wherein he adopted the recommendations rendered by the Honorable Thérèse Wiley Dancks, United States Magistrate Judge, and dismissed the action "with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) on the grounds that the Court is without subject matter jurisdiction over Plaintiff's claims and the complaint is frivolous." *Yefimova v. bank trustco,* Civ. No. 1:17-CV-403 (TJM/TWD), Dkt. No. 6 at p. 3. In that civil action, Plaintiff alleged the same facts that are alleged in this current action. In performing her initial review of the complaint, Judge Dancks noted that Plaintiff had previously raised similar facts in three different civil actions brought in the Southern District of New York, each of which were dismissed on initial review. *Id.,* Dkt. No. 4 at pp. 5-6. In fact, the undersigned has reviewed Plaintiff's litigation history in the Southern District of New York, and corresponding appeals taken to the Second Circuit Court of Appeals, and has not only confirmed the dismissal of the three cases identified by Judge Dancks, but notes that Plaintiff has brought a total of sixteen civil actions in that District, all of which were dismissed *sua sponte* at the initial screening phase, and there are at least five dismissals of appeals that had been brought to the Second Circuit Court of Appeals for lacking an arguable basis in law.[3] Further review of the Plaintiff's litigation history in the Southern District reveals that a bar order was issued on July 25, 2012, whereby Plaintiff was precluded from bringing an action in that District without first obtaining permission; indeed, several cases brought after that bar order was issued were dismissed due to Plaintiff's failure to obtain permission prior to filing the action. *See supra* note 3. The Second Circuit Court of Appeals has also issued similar warnings to Plaintiff, on three separate occasions, noting that sanctions could ensue, including a bar, should she maintain her vexatious and frivolous litigation tactics. *Id.*

**\*3**  Having been barred from the Southern District, it appears that Plaintiff is bringing her frivolous litigation practice to this District. In late-December 2016, Plaintiff filed a lawsuit against the IRS. *Yefimova v. IRS,* Civ. No. 1:16-CV-1536 (MAD/DEP). As with all her other civil actions, she did not pay the filing fee and instead sought permission to proceed

**Yefimova v. Trustco Bank, Not Reported in Fed. Supp. (2017)**

Case 3:24-cv-00074-BKS-ML   Document 4   Filed 01/26/24   Page 59 of 67

IFP. Upon initial review, the Honorable David E. Peebles, United States Magistrate Judge, recommended on January 5, 2017, that the action be dismissed, pursuant to 28 U.S.C. § 1915(e), for failure to state a claim, with leave to amend. *Id.*, Dkt. No. 5. On May 11, 2017, the Honorable Mae A. D'Agostino, United States District Judge, adopted those recommendations and provided Plaintiff with thirty days to file an amended complaint. *Id.*, Dkt. No. 12. Plaintiff filed an amended complaint, *id.*, Dkt. No. 13, however, because that pleading suffered from the same infirmities plaguing the original pleading, Judge Peebles, on June 13, 2017, again recommended dismissal, but this time without further leave to amend, *id.*, Dkt. No. 16. That recommendation, which Plaintiff lodged objections to, is pending review by Judge D'Agostino.

On April 11, 2017, while the action against the IRS was undergoing initial screening, Plaintiff filed an action against "bank trustco." *See Yefimova v. bank trustco*, Civ. No. 1:17-CV-403 (TJM/TWD). That action, which mirrors the current action as noted above, resulted in a recommendation of dismissal from Judge Dancks on May 1, 2017, which was thereafter adopted by Judge McAvoy on May 15, 2017.

Following this activity, Plaintiff filed two more lawsuits in this Court. First, she filed a civil action on June 28, 2017, naming the following Defendants: District Court Clerk; Judge Mae A. D'Agostino; Thérèse Wiley Dancks; and Security. [4] Then, on July 6, 2017, Plaintiff filed the current action, wherein she attempts to reinstate claims against Trustco Bank which have been dismissed on multiple prior occasions. Notwithstanding the fact that only four lawsuits have been brought in this District, in light of Plaintiff's apparent disdain of judicial determinations and her insistence on bringing frivolous lawsuits, I believe that it is appropriate to review whether she should be barred from bringing further lawsuits in this Court without first obtaining permission from the Chief District Judge.

### C. Recommendation of Bar Order

Courts have always recognized that they may resort to restrictive measures when responding to vexatious litigants. *In re Martin-Trigona*, 9 F.3d 226, 228-29 (2d Cir. 1993) (noting that the Supreme Court and other Circuits have imposed restrictive measures). The Court has the obligation to protect the public and the efficient administration of justice from individuals who have a history of vexatious and harassing litigation because it imposes needless expense on the parties and an unnecessary burden on the court. *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). In this context, courts have accepted the need for permanent injunctions as a result of extraordinary patterns of vexatious, harassing, and baffling litigation practices. *In re Aarismaa*, 233 B.R. 233, 247 (N.D.N.Y. 1999); *Toro v. Depository Trust Co.*, 1997 WL 752729, at *4 (S.D.N.Y. Dec. 4, 1997) (identifying the All Writs Act as a legal basis to impose sanctions and enjoin a plaintiff who abuses the judicial process).

Under the All Writs Act, 28 U.S.C. § 1651, a court may sanction a vexatious litigant who abuses the judicial process by enjoining him from pursuing future litigation without leave of the court. *Malley v. New York City Bd. of Educ.*, 112 F.3d 69, 69-70 (2d Cir. 1997); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004). An enjoinder may be permanent or may impose the less drastic remedy of a "leave to file" requirement. *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) (noting the court's ability to levy a leave to file requirement); *Raffee v. John Doe*, 619 F. Supp. 891 (S.D.N.Y. 1985) (granting a permanent injunction restraining the plaintiff from filing any further actions); *In re Aarismaa*, 233 B.R. at 247 (observing that such "restrictive measure[s] have included foreclosing the filings of pleadings in a particular case or requiring that leave of court first be sought").

**\*4** Before regulating a truculent and persistent litigant by restricting future access to the court, a court should consider

> (1) the litigant's history of the litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, and in particular whether the litigant has a good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other

sanctions would be adequate to protect
the courts and other parties.

*Toro v. Depository Trust Co.*, 1997 WL 752729, at *4 (citing
🚩 *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

It is clear that Plaintiff fits the mold of a pestilent litigator
who can only be estopped from pursuing frivolous litigation
by sanctions more austere than dismissing her actions. First,
a review of Plaintiff's litigation history shows that all of
her filed claims are frivolous. Second, Plaintiff could not
have had a good faith expectation of prevailing in her civil
actions as they not only patently lack any legal basis, but
she has already been told by multiple federal judges of
this fact. Third, although Plaintiff is a *pro se* litigant, she
has extensive litigation experience in the Southern District
of New York, having filed sixteen lawsuits in that venue,
combined with the four lawsuits brought here; she also has
appealed to the Second Circuit Court of Appeals on more than
six occasions. In each instance, Plaintiff has been informed of
the shortcomings of her pleadings/appeals, and has received
explicit direction as to how to remedy and replead, all of
which has fallen on deaf ears. Fourth, Plaintiff has caused
needless harassment and burden on the Court in having to
understand the basis for her filings, only to discover that
she has already presented the very same claims to other
judges, but because she did not like the result, she insists on
refiling, presumably until she obtains the desired result of
monetary compensation. Fifth, in light of Plaintiff's litigation
history, it does not appear that any other sanction, short of
an injunction, will be adequate to protect the Court from
Plaintiff's insatiable appetite for continued litigation. *See*
⚠ *Ulysses I & Co., Inc. v. Feldstein*, 2002 WL 1813851
(S.D.N.Y. Aug. 8, 2002), *aff'd sub nom*, 🚩⚠ *Bridgewater
Operating Corp. v. Feldstein*, 346 F.3d 27 (2d Cir. 2003).
Such persistence is evidenced by Plaintiff's continual filing of
lawsuits in the Southern District after a ban had been imposed,
and then, upon realizing she could not prevail, transferring her
litigation tactics to this District.

Thus, I recommend in addition to dismissal of the within
case that, pursuant to 🚩 28 U.S.C. § 1651(a) and the Court's
inherent authority to control and manage its own docket so
as to prevent abuse in its proceedings, Plaintiff be prohibited
from making any future filings in this District without prior
leave of the Chief Judge.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that this action be **dismissed** due to
Plaintiff's failure to comply with Federal Rules of Civil
Procedure 8 and 10 and, pursuant to 🚩 28 U.S.C. § 1915(e)
(2)(B)(ii) for failing to state a claim; and it is further

 **\*5 RECOMMENDED**, that Plaintiff be permanently
enjoined from filing any other cases in this District without
leave of the Chief District Judge. As noted below, Plaintiff
will be provided a period of time for her to lodge any
objections she has to this Court's recommendations. Plaintiff
may choose to use that opportunity to also address the
recommendation barring her from filing cases in this District
without prior permission; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of
this Report-Recommendation and Order upon the Plaintiff by
certified mail, return receipt.

Pursuant to 🚩 28 U.S.C. § 636(b)(1), the parties have
fourteen (14) [5] days within which to file written objections
to the foregoing report. Such objections shall be filed
with the Clerk of the Court. **FAILURE TO OBJECT
TO THIS REPORT WITHIN FOURTEEN (14) DAYS
WILL PRECLUDE APPELLATE REVIEW.** 🚩 *Roldan
v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing 🚩 *Small
v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.
1989)); *see also* 🚩 28 U.S.C. § 636(b)(1); FED. R. CIV. P.
72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4216987

**Footnotes**

1    Citations to the Complaint are to those page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

2    Federal Rule of Civil Procedure 8 provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a).

Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

**(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).

3    Plaintiff's litigation history in the Southern District of New York is as follows:

**1)** *Yefimova v. Schoba, et al.*, Civ. No. 1:11-CV-9123 (LAP)—consolidated with *Yefimova v. Devizon Radio, et al.,* Civ. No. 1:11-CV-9455 (LAP); dismissed pursuant to 🚩28 U.S.C. § 1915(e)(2)(B)(ii);

**2)** *Yefimova v. Devizon Radio, et al.*, Civ. No. 1:11-CV-9455 (LAP)—consolidated with #1; cited by Judge Dancks in *Yefimova v. Bank Trustco,* Civ. No. 1:17-CV-403 (TJM/TWD), Dkt. No. 4 at pp. 5-6;

**3)** *Yefimova v. Yushmanov*, Civ. No. 1:12-CV-2841 (LAP)—dismissed pursuant to 🚩28 U.S.C. § 1915(e)(2)(B)(ii); appeal dismissed for lacking arguable basis in law;

**4)** *Yefimova v. Devidzon Radio, et al.*, Civ. No. 1:12-CV-2999 (LAP)—dismissed pursuant to 🚩28 U.S.C. § 1915(e)(2)(B)(ii); appeal dismissed for lacking arguable basis in law; cited by Judge Dancks in *Yefimova v. Bank Trustco*, Civ. No. 1:17-CV-403 (TJM/TWD), Dkt. No. 4 at p. 6;

**5)** *Yefimova v. Rahamin, et al.*, Civ. No. 1:12-CV-3323 (LAP)—dismissed pursuant to 🚩28 U.S.C. § 1915(e)(2)(B)(ii); appeal dismissed for lacking arguable basis in law;

**6)** *Yefimova v. Brookdall Hospital*, Civ. No. 1:12-cv-4207 (LAP)—dismissed pursuant to Federal Rule of Civil Procedure 12(h) for lack of subject matter jurisdiction; Yefimova is warned about the sanction of a bar order should she continue to bring frivolous lawsuits;

**7)** *Yefimova v. Law Offices of Marina Tylo Esq.*, Civ. No. 1:12-CV-4802 (LAP)—dismissed pursuant to Federal Rule of Civil Procedure 12(h) for lack of subject matter jurisdiction; order to show cause issued regarding bar to filing lawsuits; resulting bar order issued;

Yefimova v. Trustco Bank, Not Reported in Fed. Supp. (2017)

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 62 of 67

**8)** *Yefimova v. Guskin et al.*, Civ. No. 1:12-CV-5994 (LAP)—dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and bar order; appeal dismissed for lacking arguable basis in law and warning issued by the Circuit regarding sanctions;

**9)** *Yefimova v. Russian Consulate et al.*, Civ. No. 1:13-CV-8327 (LAP)—dismissed due to bar order; appeal dismissed for lacking arguable basis in law and another warning issued;

**10)** *Yefimova v. Vishnevetsky, et al.*, Civ. No. 1:13-CV-8344 (LAP)—consolidated with four other actions (*see* ##11-14 below) and dismissed pursuant to bar order; appeal dismissed for lacking arguable basis in law and another warning issued; cited by Judge Dancks in *Yefimova v. Bank Trustco*, Civ. No. 1:17-CV-403 (TJM/TWD), Dkt. No. 4 at p. 6;

**11)** *Yefimova v. Gaskin, et al.*, Civ. No. 1:13-CV-8346 (LAP)—consolidated with #10;

**12)** *Yefimova v. Rahamin, et al.*, Civ. No. 1:13-CV-8347 (LAP)—consolidated with #10;

**13)** *Yefimova v. Brookdale Hospitale, et al.*, Civ. No. 1:13-CV-8348 (LAP)—consolidated with #10;

**14)** *Yefimova v. Law Offices, Marino Tylo*, Civ. No. 1:13-CV-8349 (LAP)—consolidated with #10;

**15)** *Yefimova v. Presca*, Civ. No. 1:15-CV-9774 (RMB)—dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii); and

**16)** *Yefimova v. FBI*, Civ. No. 1:16-CV-9316 (CM)—dismissed pursuant to bar order.

4    Because Plaintiff filed a motion for leave to proceed IFP in that action, I have conducted an initial review and issued a report-recommendation and order with recommendations similar to that recommended herein.

5    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    6

Yefimova v. Trustco Bank, Not Reported in Fed. Supp. (2017)

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 63 of 67

2017 WL 4157337

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Lyubov YEFIMOVA, Plaintiff,

v.

TRUSTCO BANK, Defendant.

1:17-CV-0730 (GTS/DJS)

|

Signed 09/18/2017

**Attorneys and Law Firms**

LYUBOV YEFIMOVA, Apt. E1L, Albany, New York 12207, Pro Se.

**DECISION and ORDER**

HON. GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Lyubov Yefimova ("Plaintiff") against Trustco Bank ("Defendant"), are (1) United States Magistrate Judge Daniel J. Stewart's Report-Recommendation recommending that (a) Plaintiff's Complaint be *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i),(ii), and (b) Plaintiff be permanently enjoined from filing any other cases in this District without prior leave of the Chief District Judge (after he is permitted a reasonable opportunity to show cause why such an injunction should not be issued), and (2) Plaintiff's Objection to the Report-Recommendation. (Dkt. Nos. 5, 6.) Even when construed with the utmost of special leniency, Plaintiff's Objection fails to assert a specific challenge to any portion of the Report-Recommendation. (*Id.*) As a result, the Court reviews the Report-Recommendation for only clear error.[1] Based upon a careful review of this matter, the Court can find no clear error in the Report-Recommendation: Magistrate Judge Stewart employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report-Recommendation for the reasons stated therein. (Dkt. No. 5.)[2]

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 5) is **ACCEPTED** and **ADOPTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *sua sponte* **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i),(ii); and it is further

**ORDERED** that Plaintiff shall, within **FOURTEEN (14) DAYS** of the date of this Decision and Order, **SHOW CAUSE** in writing why he should not be permanently enjoined from filing any future pleadings or documents of any kind (including motions) in this District *pro se* without prior leave of the Chief Judge or his or her designee (except pleadings or documents in a case that is open at the time of the issuance of the Court's Pre-Filing Order, until that case is closed); and it is further

**ORDERED** that, if Plaintiff does not fully comply with this Decision and Order, the Court will issue a subsequent order, without further explanation, permanently so enjoining him; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on Plaintiff by certified mail.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4157337

---

**Footnotes**

1    When only a general objection is made to a magistrate judge's report-recommendation, the Court subjects that report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999).

**Yefimova v. Trustco Bank, Not Reported in Fed. Supp. (2017)**

Case 3:24-cv-00074-BKS-ML    Document 4    Filed 01/26/24    Page 64 of 67

2    The Court notes that Magistrate Judge Stewart's Report-Recommendation would survive even a *de novo* review.

---

**End of Document**          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 7017081
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

David Carmine LETTIERI, Plaintiff,

v.

The BROOME COUNTY HUMANE
SOCIETY, Department of Justice, and
Federal Bureau of Investigation, Defendants.
David Carmine Lettieri, Plaintiff,

v.

James Quinn Auricchio, Michael J. Roemer, Lawrence
Joseph Vilardo, and Paul E. Bonanno, Defendants.

23-CV-07777 (HG) (MMH), 23-CV-07830 (HG) (MMH)
|
Signed October 25, 2023

**Attorneys and Law Firms**

David Carmine Lettieri, Lockport, NY, Pro Se.

### **MEMORANDUM & ORDER**

HECTOR GONZALEZ, United States District Judge:

 **\*1** Plaintiff was convicted at trial earlier this year, in the
U.S. District Court for the Western District of New York,
for enticement of a minor in violation of 18 U.S.C. §
2422(b) and is currently detained in a county jail located in
that district while awaiting sentencing. *See United States v.
Lettieri*, No. 21-cr-20, 2023 WL 6531514, at *1 (W.D.N.Y.
Oct. 6, 2023) (denying plaintiff's post-trial motions for
judgment of acquittal or for a new trial). Based on the
Court's review of publicly available dockets in the Western
District, Plaintiff has filed nearly 50 civil cases, many of
which he has purportedly brought on an *in forma pauperis*
basis, seeking permission to commence those cases without
prepaying the district's filing fee. In response, the Western
District has commenced a miscellaneous proceeding in which
it has ordered Plaintiff to show cause why he should not be
prohibited from filing any new actions without paying the
applicable filing fees or submitting proper requests for *in
forma pauperis* status. *See In re David C. Lettieri*, No. 23-
mc-32 (W.D.N.Y. filed Sept. 5, 2023) (ECF No. 1).

Plaintiff has also filed two civil complaints in this District,
each of which is accompanied by a request to proceed
*in forma pauperis*. In the first of these cases, Plaintiff
purports to be acting as the administrator of the estate of
an apparently deceased relative and alleges that the Broome
County Humane Society unlawfully entered his relative's
home and took his relative's dog. *Lettieri v. The Broome
County Humane Society*, No. 23-cv-7777 (E.D.N.Y. filed
Oct. 10, 2023) (ECF No. 1). Although Plaintiff's complaint
in that case names as Defendants the U.S. Department of
Justice and the Federal Bureau of Investigation, his complaint
makes no attempt to explain what role any employee of
those agencies—or any other federal employee—played in
the events giving rise to Plaintiff's purported claim against
the humane society. *Id.* In the second case, Plaintiff asserts
claims for damages against the district judge and magistrate
judge who presided over his criminal proceedings in the
Western District, along with an Assistant U.S. Attorney who
participated in the case and one of Plaintiff's own defense
attorneys. *Lettieri v. Quinn*, No. 23-cv-7830 (E.D.N.Y. filed
Oct. 16, 2023) (ECF No. 1). The basis for Plaintiff's damages
claim is unclear, but he appears to assert that the facts alleged
in the indictment against him were sufficiently different from
the facts presented at trial, such that the Court should infer that
the Government committed some kind of misconduct before
the grand jury. *Id.*

The statute that authorizes plaintiffs to receive *in forma
pauperis* status also contains a prohibition, commonly known
as the "three strikes rule," that provides:

> In no event shall a prisoner bring a
> civil action or appeal a judgment in a
> civil action or proceeding under this
> section if the prisoner has, on 3 or more
> prior occasions, while incarcerated
> or detained in any facility, brought
> an action or appeal in a court of
> the United States that was dismissed
> on the grounds that it is frivolous,
> malicious, or fails to state a claim upon
> which relief may be granted, unless the
> prisoner is under imminent danger of
> serious physical injury.

**\*2** 28 U.S.C. § 1915(g). Dismissing the complaint is the proper remedy when a plaintiff seeks *in forma pauperis* status but is ineligible to receive such status under 28 U.S.C. § 1915(g). *See Griffin v. Carnes*, 72 F.4th 16, 21 (2d Cir. 2023) ("The district court correctly concluded that [the plaintiff] was barred by the [Prison Litigation Reform Act's] three strikes provision from proceeding [*in forma pauperis*], and, therefore, properly dismissed his complaint."). [1] A district court need not hold an incarcerated plaintiff's lawsuit "in abeyance until he is able to pay the filing fees," so long as the dismissal is "without prejudice to [the plaintiff's] right to file new actions with payment of the filing fees." *Akassy v. Hardy*, 887 F.3d 91, 98 (2d Cir. 2018) (holding that "the district court plainly ha[d] the authority to dismiss an action filed in contravention" of 28 U.S.C. § 1915(g) and did not "abuse [its] discretion" by dismissing plaintiff's case without prejudice).

Plaintiff falls within this prohibition because at least three of the cases that he has filed in the Western District on an *in forma pauperis* basis were dismissed *sua sponte* for failure to state a claim before Plaintiff commenced either of his two cases in this District. *See Lettieri v. W. Dist. of N.Y.*, No. 23-cv-770 (W.D.N.Y. Sept. 11, 2023) (ECF No. 7) (granting plaintiff *in forma pauperis* status but dismissing complaint based on alleged failure by clerk's office employees to mail case filings pursuant to " 28 U.S.C. §§ 1915(e)(2)(B) and 1915A on the basis of immunity"); *Lettieri v. U.S. Dep't of Justice*, No. 23-cv-866 (W.D.N.Y. Sept. 19, 2023) (ECF No. 3) (granting plaintiff *in forma pauperis* status but dismissing complaint against Assistant U.S. Attorney based on alleged violations of Federal Rules of Evidence at criminal trial "under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)"); *Lettieri v. Vilardo*, No. 23-cv-6498 (W.D.N.Y. Sept. 21, 2023) (ECF No. 3) (granting plaintiff *in forma pauperis* status but dismissing complaint because judge who presided over plaintiff's criminal trial was immune from civil suit based on his decisions related to the parties' proposed jury instructions). Neither Plaintiff's complaints nor his applications for *in forma pauperis* status make any attempt to allege that he is in imminent danger of serious physical injury that would override the prohibition in 28 U.S.C. § 1915(g).

Dismissing Plaintiff's claims pursuant to the three-strikes rule in 28 U.S.C. § 1915(g) is procedurally proper even though Plaintiff's *in forma pauperis* applications are incomplete. The *in forma pauperis* statute only exempts incarcerated plaintiffs from prepaying the fee to commence a case and authorizes courts to collect the fee over time from a plaintiff's prison account even if a court grants *in forma pauperis* status. *See* 28 U.S.C. § 1915(b). To facilitate this collection process, the Second Circuit has required incarcerated plaintiffs seeking *in forma pauperis* status to file a signed form authorizing such collection "before making any assessment of whether an appeal should be dismissed as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)." *Leonard v. Lacy*, 88 F.3d 181, 182 (2d Cir. 1996). Although Plaintiff has provided the Court with information about the balance of his account maintained by the facility where he is incarcerated, he has not provided the form authorizing the Court to collect money from that account. However, even though Plaintiff's failure to provide the authorization form arguably precludes the Court from screening the merits of his claims, pursuant to 28 U.S.C. § 1915(e), it does not preclude the Court from dismissing Plaintiff's claims without prejudice pursuant to 28 U.S.C. § 1915(g). Such a dismissal denies Plaintiff *in forma pauperis* status without assessing the merits of his claims, requires him to pay the filing fee upfront, and does not trigger the process by which the Court may collect the filing fee in installments from Plaintiff's prison account. *See Meyers v. Birdsong*, ––– F.4th ––––, 2023 WL 6614357, at \*3 (9th Cir. 2023) (holding that " § 1915(b) neither permits nor requires the collection of fees" from a prisoner who seeks *in forma pauperis* status but whose request is denied pursuant to 28 U.S.C. § 1915(g)); *Smith v. Dist. of Columbia*, 182 F.3d 25, 29–30 (D.C. Cir. 1999) (holding that prisoner whose request for *in forma pauperis* status was denied pursuant to 28 U.S.C. § 1915(g) was not required to pay filing fee out of prison account).

**\*3** Finally, if Plaintiff attempts to re-file these cases, even if he were to pay the necessary filing fees, any such cases filed in this District would almost certainly be dismissed for lack of venue. Generally, a case must be filed in a judicial district where at least one defendant resides or in a judicial district where the facts giving rise to the claim occurred. *See* 28 U.S.C. § 1391(b). Accordingly, the appropriate venue for Plaintiff's claims against the Defendants involved in his

criminal trial is the Western District of New York, and the appropriate venue for his claims against the Broome County Humane Society is the Northern District of New York. *See* 28 U.S.C. § 112(a) (defining the Northern District of New York to include Broome County).

### **CONCLUSION**

For the reasons set forth above, Plaintiff's applications to proceed *in forma pauperis* are denied, and these cases are dismissed without prejudice pursuant to 28 U.S.C. § 1915(g). The Clerk of Court is respectfully directed to enter separate judgments, to close each case, and to mail copies of this order and the forthcoming judgments to Plaintiff. The Clerk of Court is further directed to mail a copy of this order to the Clerk of Court for the Western District of New York.

If Plaintiff wishes to reassert his claims, he must file new actions in a district court where venue is proper and pay the $402.00 filing fee for each case to the Clerk of Court for that district. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of any appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 7017081

---

## Footnotes

1    Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.